## Beriah Palmer and others *against* Amos Mulligan and others.

THIS was an action on the case for erecting and continuing a nuisance to the plaintiffs' mills and dam, situated upon the river *Hudson*, at *Stillwater*, in the county of *Saratoga*, by building above the same a dam, and thereby directing the water from its ancient and accustomed course, and from the mills and dam of the plaintiffs, in consequence whereof they had not a sufficiency of water for working.

The declaration set forth other *gravamina* in obstructing the rafting of timber into their dam, which was used as well to keep logs to be sawed, as to collect and retain water for working their mills; in also opening the sluice-

*[margin note:]* NEW-YORK, Nov. 1805

Palmer v. Mulligan.

*[margin note:]* The Hudson is a public river, above tide water, *ut semble.* An action will not lie for diverting the water of a river from its usual course, by erecting a dam for mills above the mills of another, if sufficient water be left to work the lower mills though, in consequence of

NEW-YORK,
Nov. 1805.

Palmer
v.
Mulligan.

such erection, it be necessary to run the mill-dam of the lower mills further into the stream, and the difficulty of getting logs to the lower mills be increased so much as to require one hand more for every 25 logs. Where persons have an equal right to erect mill-dams on a river, the rubbish which comes from a newly erected upper dam, to an old lower dam, though it be an inconvenience to the lower of about 250 dollars a year, will, if a jury have found in favor of the defendant, and it appear that the floating rubbish of the river be lessened by the erection of the upper dam, be damnum absque injuria. No new trial will be allowed on account of newly discovered testimony, if it appear that it might have been procured on the first trial.

way of the defendants' dam, and causing the rubbish collected therein, to be carried into that of the plaintiffs, by means whereof it was choaked up, and rendered useless, so that they lost the benefit and advantage of their mills.

From the evidence at the trial, it appeared that the plaintiffs' mills were erected on the first settlement of that part of the country, about forty years ago, upon their own ground, and were fed with water by a dam run out into the river. That at their first building they consisted of a grist and saw-mill, which, after being burnt down, were, within a year, rebuilt on the same spot. That after this, the saw-mill was a second time consumed by fire, and though the grist-mill, (on which point there was a small contrariety of testimony) was worked from time to time, the saw-mill was not reconstructed, till seven or eight years afterwards. A year or two before this period, the defendants erected their mill and dam, about two hundred yards above those of the plaintiffs. That the unavoidable consequence of the dam of the defendants, was to oblige the plaintiffs to run their's further out into the stream; but even then, the current was so turned off into the river, as necessarily to increase the difficulty of bringing timber into the saw-mill of the plaintiffs; insomuch that it was impossible to avoid losing a great many logs, or reclaiming them at a considerable expense, to obviate which, the defendants had, when applied to, by the plaintiffs, refused permission to have a way made through their dam. That the rubbish from the defendants' mill, which it was more difficult to clear, at low than high water, was a continual inconvenience to the plaintiffs, who sustained an injury of about 8 shillings a day, exclusive of an increase of labor, which, since the erection of the defendants' dam, required about one hand more to every 25 logs, than was formerly necessary to get them in.

The jury finding in favor of the defendants, application was now made, to set aside that verdict, as being contrary to the testimony adduced, and on a discovery of

new testimony, which it appeared might have been obtained on the first trial.

*Emott*, for the plantiffs. On the first point stated, and upon which we intended to rely, the mere reading the case shews there can be no dispute ; but the defendants mean to contend, that the mills and dam of the plaintiffs, being on a public river, are in themselves public nuisances, and therefore the obstruction to them, does not give any right of action. To prove the suit may be maintained, it will be necessary to establish that the *Hudson* is not a public river, in the sense which will make these mills a nuisance. For if it be one of such a nature as to permit the plaintiffs to acquire property in the bed of it, their mills and dam cannot be nuisances. It is laid down in the case of the *Fishery of the Banne, Davis* 56, that there are two kinds of rivers, navigable, and not navigable ; the former extending as high as the sea ebbs and flows, and belonging to the king ; the latter being such where the sea does not ebb and flow, and belonging to the landholders on each side. This exactly answers the description of the *Hudson* where the mills in question are erected ; for at *Stillwater*, there is neither flux, nor reflux of the tide. We find the doctrine in *Davis*, confirmed in the treatise of Lord *Hale, de Portibus Maris, Harg. Tracts,* 5.

SPENCER, J. Has not the legislature granted islands above the site of these mills, and by that shewn that they consider the *Hudson* to be a public river?

*Emott.* Where they have done this, the river has formed the boundaries of the adjoining patents, which have been granted *to* the river. Otherwise the common law prevails, and that was the very reason which induced the legislature to declare that certain rivers, coming within the description above given, of private rivers, should, notwithstanding, be deemed highways. 1 *Rev. Laws* 601, 2. *Sec.* 34. But although we claim property in this river, we admit the public have a right to it for all the purposes of navigation. *Harg.* 6. We do not insist on the power

*[margin:]* NEW-YORK, Nov. 1805

Palmer v. Mulligan.

NEW-YORK, to stop up the river. That, for the convenience of the
Nov. 1805. people at large is open, but this does not impair our right
Palmer of property against individuals. Admitting the *Hudson*
v. to be a public river, all erections on it are not to be consi-
Mulligan. dered nuisances. They can be deemed so, only under
the idea that a public river is a highway. *Buller* J. ob-
serves in *Ball* v. *Herbert*, 3 *D.* & *E.* 263, " no two cases
" can be more distinct. In the latter, if the way be found-
" erous and out of repair, the public have a right to go on
" the adjoining land ; but if a river should happen to be
" choaked up with mud, that would not give the public a
" right to cut another passage through the adjoining lands."
To make the mills and dam nuisances they must, allow-
ing the river to be public, narrow the river so as to impede
the navigation, " and this is matter of fact. It is not eve-
" ry building below low water mark that is *ipso facto* in
" law a nuisance ; for that would destroy all the keys that
" are in all the ports in *England*." Per Lord *Hale* in *Harg.*
*Tracts*, 85. The grants to erect wharves beyond low wa-
ter mark, are proofs that so long as the navigation is un-
interrupted, a building, even on the public river, is not a
nuisance. At all events, our nuisance will not justify
theirs. It may, however be said, that the defendants are
as well entitled to run out a dam from their shore, as we
from ours. This, with some qualifications, is true : for it
must be so done as not to injure us in the accustomed use of
the water. In *Brown* v. *Best*, 1 *Wils.* 174, in an action
for diverting a water course which arose in the defend-
ant's own grounds, the plaintiff declared simply on his
possession of the place to which it used to run, and the
court held it good, for the defendant could not divert so
as to interrupt the ancient enjoyment of the stream. The
same principle is recognised in *Duncomb* v. Sir *Edward*
*The book is* *Randall*, *Hetley* 34.* To maintain the action it is not
mispaged, for
though print- necessary that mills should appear to be ancient. That
ed 34, it is 32. is requisite only when the water belonging to another is
prescribed for. *Palmis* v. *Heblethwait*, *Skin.* 65. " If a
" man," says Lord *Hale*, " erect a mill on a water course

"running through his land, he may bring his action for "diverting the stream, and not say *antiquum molendi-* "*num*." *Cox* v. *Mathews*, 1 *Vent*. 237. The same doctrine is laid down in *Rutland* v. *Bowler*, *Palm*. 290, and *Hutton* 100. For by the mere erection of the mill, the plaintiff acquired a right, which even the purchase of the land on which it stood, would not take away, as a right to water is not extinguished by unity of possession. *Shury* v. *Piggot*, 3 *Bulst*. 339. Was it necessary even to presume a grant for the stream, it ought, after a use, like ours, of forty years, to be presumed. Thirty years enjoyment of a highway is said to warrant one. *Bull. N. P.* 75. In the case of lights, twenty years possession have been held enough. 3 *D.* & *E.* 159.\* It may, however, be thought, that because the mills were burnt down, the defendants had a right to divert ; but even pulling down the mills by the plaintiffs themselves, would not have impaired their title to the water ; they might even in such a case prescribe. *Palmis* v. *Heblethwait*, as reported in 2 *Show.* 261. The same position is laid down in *Luttrel's case*, 4 *Rep.* 86, 7. The present, therefore, is still stronger; for the mills were burnt down.

*Foote*, contra. The lapse of time before the plaintiffs attempted to rebuild their mills, is alone an answer to their claim of right. The convenience of a new country demands that mills so long left unrebuilt, should be deemed to be abandoned and the right to the water relinquished. The authorities cited, apply to mills on private streams. The *Hudson* at *Stillwater* is a public river.

SPENCER, J. A motion has been made on the part of the plaintiffs for a new trial on two grounds. 1st. That the verdict is against the weight of evidence, and 2d, on discovery of new evidence.

The plaintiffs' witnesses generally accorded in saying, that the only injury to the plaintiffs by the erection of the defendants' dam, is this, that it occasioned additional labor and expense to the plaintiffs to carry logs into their dam. None of them pretend that there has been any diver-

NEW-YORK, Nov. 1805.

Palmer v. Mulligan.

\* *Darwin* v. *Up* -*c*, cited there.

sion of the water since the defendants erected their dam, which was seven or eight years ago. Some of the plain- tiffs' witnesses think the rubbish increased in the plaintiffs' dam, since the erection of that of the defendants'; others think it not increased.

It is conceded that the plaintiffs and defendants own the lands respectively on the bank of the river, opposite their mills and dams.

Whether the *Hudson* river be considered as a public highway, or the bed of it as belonging to the owners of the adjacent shores, will not, I think, vary the result.— I cannot, however, but consider it as a common highway, independent of its being navigable with small craft and rafts above the place in dispute, the legislature have con- stantly considered this river as public, and common to all the citizens of the state above tide water, and above *Still- water.* They have granted islands in this river at *Glens Falls*, and in the town of *Greenwich*, in *Washington* county.

The act declaring certain waters highways not extend- ing to this river, has been considered as impliedly sanc- tioning the idea that it is not public property; I should draw the contrary inference, for if the legislature have de- clared such rivers as the *Conhocton*, the *Unadilla*, the east branch of the *Chenango*, and the great variety of other in- land waters, public highways, as necessary to the public convenience, it must have been taken for granted, that the *Hudson* river was already a public highway, and needed not an act declaring it to be so. If then this river is to be deemed a highway, the erection of both dams are nuisan- ces, and it is questionable whether the plaintiffs can, without right or title, complain that the defendants' nuisance is in- jurious to their nuisance; but on this point it is unneces- sary to express an opinion.

If this river be considered as private property, belong- ing to the owners of the adjacent shores, the plaintiffs can- not maintain their action from the evidence before us; because there is no pretence of the waters being diverted; the use of the plaintiffs' property is rendered less commo-

dious by the defendants' dam. The act itself, in erecting the dam, on the principles contended for by the plaintiffs' counsel, was a lawful act; and though in its consequences slightly injurious, the plaintiffs are remediless. It would have been as tenable ground if the plaintiffs had declared on the loss of custom to their mill, by the erection of the defendants; it is a *damnum absque injuria.* The erection of dams on all rivers, are injurious in some degree to those who have mills on the same stream below, in withholding the water, and by a greater evaporation in consequence of an increased surface, yet such injuries, I believe, were never thought to afford a ground of action. In any and every view of the subject, the verdict was legal, and just. The second ground of the motion does not alter the case, even if the testimony could be considered as newly discovered, and that there had been no *laches* on the part of the plaintiffs; but for aught that appears, *John White*, one of the plaintiffs, knew of this testimony and neglected to procure it. I am averse, however, to putting it at all on that ground; the testimony discovered is wholly irrelevant and immaterial. In my opinion, the plaintiff takes nothing by his motion.

LIVINGSTON J. In determining this cause, I am willing to admit that the erection of the plaintiffs' mills and dam is not only no nuisance or obstruction to the river, but a public as well as private benefit. Still I am not satisfied of their right to recover. Whatever their pretensions to build a dam and mills adjoining their own land may have been, it must be conceded that, as far as the public are concerned, the defendants had the same right opposite their ground, provided it could be done without injury to the navigation of the river. This is not pretended to be the case, but as the plaintiffs' mills were first erected, it is said, that if the defendants have any right of this kind, they must so use it as not to injure their neighbours. Without denying this position, which is indeed become a familiar maxim, its operation must be restrained within reasonable bounds so as not to deprive a man of the en-

joyment of his property, merely because of some trifling inconvenience or damage to others—of this nature is the injury now complained of, so far at least as it is supported by proof. It is not pretended that the water is diverted, or that less business can be now done at the plaintiffs' mills than formerly, but they are obliged to bring their logs a very little farther round in the river, (in order to get them into the dam) which is the principal, if not only inconvenience they are exposed to by the defendants' conduct. Were the law to regard little inconveniencies of this nature, he who could first build a dam or mill on any public and navigable river, would acquire an exclusive right, at least for some distance, whether he owned the contiguous banks or not; for it would not be easy to build a second dam or mound in the same river on the same side, unless at a considerable distance, without producing some mischief or detriment to the owner of the first. Were this not permitted for fear of some inconsiderable damage to other persons, the public, whose advantage is always to be regarded, would be deprived of the benefit which always attends competition and rivalry. As well, therefore, to secure to individuals the free and undisturbed enjoyment of their property, as to the public, the benefits which must frequently redound to it from such use, the operation of the maxim *sic utere tuo ut alienum non lædas* should be limited to such cases only, where a manifest and serious damage is the result of such use or enjoyment and where it is very clear indeed, that the party had no right to use it in that way. Hence it becomes impossible, and indeed improper, to attempt to define every case which may occur of this kind. Each must depend on its own circumstances, and the fewer precedents of this kind which are set, the better. Confining myself, therefore, strictly to the case before us, my opinion is, and the jury probably proceeded on that ground, that the plaintiffs proved no injury, or one so remote and insignificant, as not to justify their insisting on an abatement of the defendants' dam, or damages for its erection.

If this view of the subject be correct, it will account for my passing over some points which were made on the argument without giving an opinion on them. This I avoid doing, because experience has already convinced me that it is always best in a judge to be silent on every point which he does not regard important and necessary in the decision of a cause.

I will only add, that the further testimony which is expected from Schuyler, will not change what appears to me the merits of this cause.

Neither, therefore, as a verdict against evidence, nor on the ground of newly discovered evidence, can I consent to a new trial.

TOMPKINS, J. I concur in the result of the opinions delivered.

THOMPSON, J. On the argument, the right of the plaintiffs, to maintain an action, even admitting them to have sustained an injury, has been called in question, because as is alleged, their mills being erected on a public river, are in judgment of law a nuisance. How far this allegation is founded in point of fact, is not now a subject of inquiry; that is a question between the public and the plaintiffs, and cannot be tried in this collateral way, 4 *Bur.* 2163. *Har. Law Tracts*, 8. 9. It is a fact of public notoriety, and therefore proper to be assumed as such, that the tide does not ebb and flow as high up the *Hudson* river, as the place in question; and therefore, the land under the water is, I apprehend, as much the subject of a private grant, as the land adjoining the river, subject however, to be used by the public for the purposes of boating, and rafting, and other objects of this description, as far as shall be necessary for public use and accommodation, *Har. Law Tracts*, 8. 9. These are the rules and distinctions adopted by *Hargrave*, and which appear to me to be just and reasonable. The right thus claimed by the plaintiffs, being a subject of private and individual interest, we have only to look to the facts in the case, to see how far the plaintiffs have established this right in themselves, and without examining such fact in detail, I

am warranted in saying, they have all the right that may legally be presumed to result from a possession of about forty years ; and which I consider amply sufficient to raise the presumption of a grant. Lord *Ellenborough* in a late case decided in the court of *King's Bench*, in England, says, the general rule of law is, that independent of any particular enjoyment, used to be had by another, every man has a right to have the advantage of a flow of water, in his own land, without diminution or alteration ; but an adverse right may exist, founded on the occupation of another, and if this occupation has existed for so long a time, as may raise the presumption of a grant, other parties must take the stream subject to such adverse right, and that twenty years exclusive enjoyment of the water, in any particular manner, affords a presumption of right, in the party so enjoying it, derived from grant or act of parliament, 6 *East Rep.* 214. 215. If the rules there laid down, are, as I apprehend them to be, undeniable principles of the common law, and we apply them to the present case, they will establish beyond contradiction, the plaintiffs' right to the use of the water, in the same manner it was enjoyed, before the erection of the defendants' mill and dam. No presumption of right derived from a grant, can attach to the defendants, they not having been in possession more than eight or ten years. If I am correct then with respect to the law, as applicable to the case, it remains only to examine the facts touching the injury alleged to have been sustained by the plaintiffs, in order to test the propriety of the verdict. The broad question for the determination of the jury was, whether the plaintiffs had sustained any injury by the mills and dam erected by the defendants, about two hundred yards above those of the plaintiffs. One cause of injury complained of was, the increased difficulty of getting logs into their dam. On this subject there was no contradiction of testimony. That the upper dam would increase this difficulty, was not only fully established by the plaintiffs' witnesses, but strengthened and confirmed by those of the defendants. The injury on this account, is not merely nominal, but real and permanent, and

NEW-YORK,
Nov. 1805.

Palmer
v.
Mulligan.

that to a very considerable extent. One of the witnesses testified that before the defendants' dam was built, the plaintiffs might bring into their dam, from one hundred to one hundred and fifty logs at a time, whereas at present, they cannot more than twenty-five, and that logs are frequently lost in getting them over, or past the upper dam ; that by reason thereof, within four years past, he supposed the plaintiffs had lost as much as four hundred logs, worth from thirty-five to forty pounds per hundred. Another witness who had been a sawyer in the plaintiffs' mill, swore that it was impracticable to go round the upper dam with logs, and get into the lower dam, the course of the current being so altered, that they would run past, and that being obliged to run over the upper dam, the cribs or rafts were frequently broken and the logs lost ; that the rubbish from the upper mill was a daily inconvenience to the lower one; that he never was employed twenty-four hours in sawing, without clearing it away, which would not have been the case but for the upper dam, and he estimated the damage in the mere stoppage of the mill, at eight shillings per day. From the testimony in the case, it appears that these dams are formed by throwing wings out diagonally into the river ; that the upper dam stands on the channel, through which logs used to pass to the plaintiffs' mill ; that the course of the current is thereby changed, set further out into the river, and rendered more rapid; that the upper dam made it necessary for the plaintiffs, to extend theirs further into the river, for the purpose of getting more water, and to enable them to bring logs into their dam, which would have been impracticable without such extension. From the whole current of testimony, I think it is manifest, that the plaintiffs have sustained very essential injury. If the facts in the case will warrant the presumption, that the plaintiffs' right is derived from a grant, that right must be understood to secure to them the use of the water, in the manner they enjoyed it before the erection of the defendants' dam. I admit that actions of this kind ought not to be countenanced, where the damages are merely nominal, or a party is put to some

Vol. III.                         R r.

trifling inconvenience, but I do not consider this a case of that description, the damages here are real and permanent, and are occasioned by a diversion and alteration, of the usual and ordinary current of the water. Under these circumstances, I cannot think the jury confined themselves to the question of damages, but undertook to pronounce upon the law, as applicable to the rights of the parties. In whatever point of light, therefore, the case is viewed, I think the verdict is both against law and evidence, and that a new trial ought to be granted.

I have not thought it necessary, to say any thing respecting the newly discovered testimony, because I do not consider that the evidence on the trial, could afford any presumption of an abandonment, or dereliction by the plaintiffs, or those under whom they claim, of the right to the use of the water as formerly enjoyed. If any doubt, however, could arise on that subject, it would, I think, be removed by the affidavit accompanying the present application.

KENT, C. J. The first object of inquiry, as arising upon this case is, whether the *fact proved* by the plantiffs will authorise a recovery?

The plaintiffs, and those from whom they derive title, own the land on the *Hudson* river at *Stillwater*, and had for upwards of thirty years before the erection of the dam complained of, owned and enjoyed a grist and saw-mill upon that river. The *Hudson* at *Stillwater* is a fresh river, *not navigable* in the common law sense of the term, for the tide does not ebb and flow at that place. In the case of *the Royal Fishery*, *in the river Banne, Davies Rep.* 152, 155, 157. it was resolved, that by the rules and authorities of the common law, every river where the sea does not ebb and flow was an inland river not navigable, and belonged to the owners of the adjoining soil. This case was cited by Mr. Justice *Yates*, in *Carter* v. *Murcot,* 4 *Burr*, 2162. as a very good case, and a solid authority, and in that latter case recognized this distinction between rivers navigable and not navigable, and in *the King* v. *Wharton*, 12 *Mod.* 510. Lord *Holt* laid down the

same doctrine. In Sir *Matthew Hale's* excellent treatise, *de jure maris*, *&c. Hargrave's law tracts*, and which is considered by Mr. *Butler* as exhausting the whole law on the subject, he lays down the law generally that fresh rivers of what kind soever, do of common right belong to the owners of the adjacent soil, but he admits that fresh rivers, as well as those which ebb and flow, may be under the servitude of the public interest, and may be of common or public use for the carriage of boats, &c. and in that sense may be regarded as common *highways by water*. Thus, he adds, that the *Wey*, *Severn*, *Thames*, &c. as well above as below the flowing of the tide, and as well in the parts where they are of private as of public property, are public rivers *juris publici*, and nuisances and impediments therein, are liable to be punished by indictment. They are called public rivers not in reference to the property of the river, but to the public use. *Hargrave, p.* 5, 8, 9. This is the true and just rule which harmonizes private right, with the public interest. The *Hudson* at *Stillwater* is capable of being held and enjoyed as private property, but it is, notwithstanding, to be deemed a public highway for public uses, such as that of rafting lumber, to which purpose it has heretofore been, and still is beneficially subservient. To obstruct this and other public uses of the river, by dams, &c. would be a nuisance, but of this question we have nothing to do in the present case. Whether a dam or mill be a nuisance, is a question of fact which is not examinable in this present action, and if it was, there is every reason to conclude that neither of the dams or mills are nuisances from the length of time that they have been permitted to remain.

It is not stated whether the river was, or was not excepted out of the grants under which the parties, in this suit, hold their property. The case admits that *the right of the premises, whatever it is, was in the plaintiffs*, and we have seen that the river at the place in question is susceptible of being granted without any public inconvenience, because the right of the public, to the use of the water for

navigation would remain incontestible.   As between the
parties to this suit and the question litigated by them, the
water may be considered as if included in their grants,
whatever the real fact may be.  The defendants have clear-
ly therefore no right to obstruct the plaintiffs in the enjoy-
ment of the water.   They have an equal right to build a
mill on their soil, but they must so use the water and so
construct their dam as not to annoy their neighbour below
in the enjoyment of the same water.   The plaintiffs had
used and enjoyed their mills even beyond the present peri-
od of limitation in a writ of right, when the defendants built
their dam.   It was not requisite, however, that the plain-
tiffs should have been able *to prescribe* for the enjoyment
of their mills.   It is sufficient that they had an interest in
the water, and the defendants cannot lawfully divert the
natural course of the river, or injure the plaintiffs in the
exercise of their rights.   A water-course doth not begin
by prescription, as *Whitlock, J.* observes, nor yet by assent,
but the same doth begin *ex jure naturæ*, having taken this
course naturally, and cannot be diverted.   All the cases
agree that the plaintiff need not aver his mill to be an *an-
cient* mill, where a natural water-course is diverted.   1
*Vent.* 237, *Skinn.* 65,  *Palm.* 290, 1 *Wils.* 174.  3 *Bulst.*
340.   The fact then, of the interruption of the use of the
water, after the mill was burnt, and before it was rebuilt, is
perfectly immaterial.   The question is, have not the de-
fendants materially and permanently injured the plaintiffs by
giving a different direction to the course of the main cur-
rent?  Many cases may be supposed which would be *dam-
na absque injuria;* such, for instance, as the insensible evap-
oration and decrease of water by dams, or the occasional
increase and decrease of the velocity of the current, and of
the *quantum* of water below.   Many such circumstances
may be inevitable from the establishment of one dam above
another upon the same stream.   The question in such cases
would turn upon the *nature* and *extent* of the injury.——
Here the injury is a continued and permanent one, and ve-
ry material to the party.   The defendants have not attempt-

ed to shew that the injury was inevitable, and that they cannot have and enjoy a mill in the place they do, without creating this injury. What would be the effect of this proof if shewn, would be another question, but no such defence has been attempted, and I may take it therefore, for granted, that the defendants can, if they please, so alter their dam as to be able to enjoy their mill and avoid giving the injury.

If a right of action in the plaintiffs be assumed, I think this a case proper for the interference of the court. The verdict is clearly against evidence. The plaintiffs had eight witnesses who established the fact that the dam and mills of the defendants did materially injure and disturb the plaintiffs. One witness estimated the damage from $90 to $100 a year. The four witnesses on the part of the defendants do not attempt any direct contradiction of this fact. They prove only that the plaintiffs had felt inconveniences before the erection of the defendants' dam, but they do not deny but that these inconveniences have been increased.

For these reasons I am of opinion that the verdict ought to be set aside.