# CASES

# Supreme Court of Judicature,

OF THE

## STATE OF NEW JERSEY,

AT SEPTEMBER TERM, 1825.

---

THOMAS CAMPBELL v. JOSEPH SMITH, JOHN W. SMITH, and WILLIAM SMITH.

1. Twenty years of adverse possession of a diverted water course are indispensably necessary to defeat the proprietor of the ancient channel, and to repel his reclamation of his right.

2. The opinion of Lord Ellenborough in Beatty v. Shaw, 6 East, 208, commented on.

---

This was an action brought by Campbell against the Smiths for prostrating a dam and thereby diverting water from his mill. It was tried at the Essex circuit before his honor Justice ROSSELL, and a verdict found for the defendants, after the following charge to the jury.

"This is an action of trespass on the case brought by Thomas Campbell against the defendants, for that they had unlawfully prostrated a dam by which water was conveyed

to his mill and beneficially used by him in the course of his business as a manufacturer of paper and to his damage, one thousand dollars.

" In support of his claim he has given in evidence that John Clark owned and was possessed of this mill, land and its appurtenances in the year eighteen hundred. That in eighteen hundred and seven Clark being greatly in debt the whole of this property was sold by the sheriff and purchased by John Lang under whom by several mesne conveyances he claims title to the mill, lands and water courses including the small stream for the diverting of which from his mill and use this action was brought; that this stream with some interruptions has been successively applied to the use of said mill by its several owners as some of his witnesses say for more than twenty years and that Joseph Smith one of the defendants acknowledges that he had broken down the dam in question. The defendants claim this water as theirs and justify the act of cutting or breaking the said dam; and have given in evidence that the springs from which this stream is fed rose in the lands of Walter Smith, their grandfather, and in its natural course ran over his lands, and for a small distance over the lands of John Denman, then changing its course it again ran through and over the lands of the said Walter; that in eighteen hundred, John Clark the son-in-law of Walter Smith built a paper mill on two tracts of land purchased of said Smith and Denman; that this mill went into operation by force of another and distinct stream of water; this mill was burned in eighteen hundred and one, and partially rebuilt the same year; that in eighteen hundred and three, John Clark believing that this small stream would be a beneficial addition to his water applied to his father-in-law Smith to sell it to him for that purpose; Smith refused to sell or give it to him alleging as his reason, that he or some of his family might at a future day build a mill themselves when this stream would be wanted for that; but if he Clark would

Campbell *v.* Smiths.

agree with Denman to let it pass through his lands he might divert it from its natural course and use it for his mill, until himself or family might want it for themselves; that these terms on which only J. Clark could procure the use of this stream, had been at different times and to different persons repeatedly acknowledged by him, by his wife and others; that the defendants, grandsons of old Mr. Smith, have built a mill for which this water is necessary, and as the time for which their grandfather permitted Clark to use this water has expired they claim it as theirs, and for that reason they prostrated the dam which diverted its course through a canal to the paper mill formerly Clark's, now plaintiffs, that it might flow in the bed formed by nature in its origin.

"Thus stands so much of the evidence on both sides as to me seems important for your consideration. In one great fact they differ, viz: the length of time the plaintiff and those under whom he claims have enjoyed the use of this water; two or three of the witnesses on the part of the plaintiff say that it has been used by the mill owners as they believe, (they are not certain) for more than twenty years, whilst three or four of the defendants' witnesses positively assert that this stream was not diverted from its natural course until the year eighteen hundred and three; in which case the plaintiff could not claim the benefit of a full twenty years' possession. These contradictions it is your province to reconcile if you can, or decide this question if you may think it necessary according to the credit you attach to the characters, reasons and powers of recollection of the different witnesses, and of which you are the exclusive judges. The plaintiff claims your verdict not from any documentary or paper title, but from this twenty years' possession. A number of authorities have been read which prove that twenty years' adverse and uninterrupted possession establishes a title; and that a jury on a possession of less than twenty years attended with circumstances favorable to a presumption of title may so presume it. But the same

authority also proves that if that possession is attended with circumstances unfavorable to their title it will altogether destroy the presumption relied on.

"But this twenty years' possession must be adverse. That is the possessor must claim in his own right or in that of him under whom he enjoys the premises and who holds it in opposition to all others. It is a settled principle that if a man goes into possession of my land and continues there one hundred years acknowledging my right his possession cannot defeat my title. How stands this case? Clark himself did not pretend to claim this water as his own; he repeatedly acknowledged the right to be in his father-in-law and that he could use it no longer than during the pleasure of Smith. In eighteen hundred and seven the sheriff sold these premises as the property of Clark and the purchasers became entitled to all Clark's right in the premises but not a particle more; and the subsequent grantors unless they had added other rights than those purchased at the sheriff's sale, had no power to grant more; if I am correct in this and the purchasers have been in the quiet possession of this water since the sheriff's sale, yet it would fall about five years short of the time they rely on to enable them to recover. If you believe the testimony justifies the facts as I have stated them, the plaintiff cannot have any legal right to recover, and your verdict should be for the defendants or not guilty."

Upon the coming in of the *postea* a rule was taken to shew cause why the verdict should not be set aside and a new trial granted, which was argued by the

*Attorney General* for the plaintiff, and

· *Hornblower* and *Halsey* for the defendants.

EWING, C. J. A stream of water was accustomed for a long series of years and beyond the memory of the most aged of the vicinage, to flow in a natural channel in the township of Springfield, in the county of Essex. In the year.

1800, John Clark built a paper mill at a short distance from this ancient water course, on a lot of land of which he had become the owner, through which it did not run and to which it did not adjoin. Some time after the erection of the mill, Clark placed, not on his own land but on the land of John Denman, a dam across the ancient water course and dug a ditch whereby he led the water diverted from its channel into a pond on his own land, fed by other streams, on which he mainly relied for his manufacturing operations. In the summer of 1822, the defendants, then the owners, of the land through which the stream had in times past flowed and of course, of its ancient bed, built a pasteboard mill, and to aid in the necessary supply of water, in October of that year, prostrated the dam and thereby permitted the water to resume its ancient channel, and deprived the plaintiff, for some time previous become the owner of Clark's mill, of the advantage which he and his predecessors for some years had used and enjoyed.

The plaintiff sought redress by the present action brought to November term, 1822, and tried at the April Circuit, 1823, before *Justice Rossell*, when the jury found a verdict for the defendants after a charge from the Judge, in which having first given a view of the claims of the parties and of the evidence on both sides, he proceeds thus.—(Here the Chief Justice read the charge.)

The verdict is impugned by the plaintiff, because as he alleges the Judge presented the case to the jury in too limited a view, placing it only on the length of time and the nature of Clark's possession and that he did not, as he ought to have done, inform them that under the circumstances of the case, they were warranted to presume against the claim of the defendants.

I do not understand the charge precisely as the plaintiff's counsel, and hence I do not consider the judge as having presented so limited a view; for although it is true he told them that relying on time for a presumption of title there

must be twenty years, and those, years of adverse possession, and that in his opinion, submitting the matter however as a question of fact to their examination, the possession of Clark was not adverse, and if so, the case did not afford the plaintiff the requisite period, yet he also informed them, " that a jury have a right on a possession of less than twenty years attended with circumstances favorable to a presumption of title to presume it." If then the jury found such circumstances to exist, they were authorized under this direction, to have presumed a grant and sustained the claim of the plaintiff.

It is true the judge did not inform the jury that under the circumstances of the case they were warranted to presume against the claim of the defendants :—or in other words that upon the facts in evidence the law had deprived the defendants of a right which once existed in them or those under whom they claimed to the flow of the water in the ancient channel. On the contrary, the charge was very distinctly the reverse; and yielding fully that the jury ought to have been informed, if such were the law, that the circumstances did warrant them so to presume, the inquiry results whether such circumstances are presented by the case.

The use and enjoyment of water flowing in an ancient channel through one's land, and to prevent the diversion and deprivation of it, especially by a person owning no land through which it runs, are rights as certain, recognized and well defined as any within the compass of legal protection. Property in water, and in the use and enjoyment of it, oftentimes as valuable, is as well secured as any other. Among the oldest reports in print will be found an assertion of this right. In the book called Liber assisarum 32 *Edw.* 3, *fol.* 194 *Pl.* 2, an assise of nuisance was brought because the defendant had made a trench and thereby drawn from a river, a part of the water which had been accustomed to run to supply the mill of the plaintiff. It was adjudged that the plaintiff should recover his damages and that the water

Campbell *v.* Smiths.

should be returned to the ancient channel at the cost of the defendant. A train of subsequent cases has sustained the right. *Luttrel's case*, 4 *Co.* 86; *Stone* v. *Bromwich, Yelv.* 166; *Countess of Rutland* v. *Bowler, Palm.* 290; *Shury* v. *Piggot, Bulst.* 309; *Sands* v. *Trefuses, Cro. Car.* 575; *Cox* v. *Matthews*, 1 *Ventr.* 237; *Palmes* v. *Heblethwaite, Skinner* 65; *Mersey and Irwell Navigation Co.* v. *Douglass*, 2 *East.* 502. In *Gardner* v. *The Trustees of the village of Newburg*, 2 *John. Ch. Rep.* 165, *Chanc. Kent* said "a right to a stream of water is as sacred as a right to the soil over which it flows. It is a part of the freehold of which no man can be disseissed but by law." Our venerable and learned C. J. KINSEY in the case of *Merrit* and *Parker*, 1 *Coxe* 460, said "when a man purchases a piece of land through which a natural water course flows he has a right to make use of it in its natural state, but not to stop or divert it to the prejudice of another. *Aqua currit et debet currere* is the language of the law. The water flows in its natural channel and ought always to be permitted to run there, so that all through whose land it pursues its natural course may continue to enjoy the privilege of using it for their own purposes. It cannot legally be diverted from its course without the consent of all who have an interest in it."

This right, like other rights of property; like "the right to the soil over which it flows;" like "the freehold of which it is part;" like "the land" through which "it pursues its natural course," may be lost by efflux of time. Statutes of limitation prescribing the time within which an entry shall be made into lands, tenements or hereditaments, (*Rev. Laws* 411, *Sec.* 9,) and within which every real, possessory, ancestral, mixed or other action for any lands, tenements or hereditaments shall be brought, (*Ibid, Sec.* 19,) are not deemed to comprehend in terms and within their purview, the right now under consideration; but upon the wise principles of such statutes, and in analogy to them, to quiet men's possession and to put an end and fix a limit to strife, a rule is

Campbell *v.* Smiths.

established that, after the lapse of the period mentioned in those statutes, a grant will be presumed, not says *Lord Mansfield, Cowper* 215, *Eldridge* v. *Knott and others*, that in such cases the Court really thinks a grant has been made, but they presume the fact for the purpose and from a principle of quieting the possession. The period of twenty years is settled in England, according with the time mentioned in the statute of 21 *Jac.* 1. Our statute prescribing a like period, our rule is the same, and pursuing the analogy, the possession which shall ripen into a right and defeat a title, otherwise valid, must be open, notorious and adverse.

In the case of *Prescott* v. *Phillips*, (*cited* 6 *East.* 283,) *Adair*, Chief Justice of Chester, ruled that nothing short of twenty years undisturbed possession of water diverted from the natural channel, could give a party an adverse right against those whose lands lie lower down the stream and to whom it was injurious, and that a possession of above nineteen years, which was shewn in that case, was not sufficient.

In *Bealey* v. *Shaw*, 6 *East.* 208, *Lord Ellenborough* says "Independent of any particular enjoyment used to be had by another, every man has a right to the advantage of a flow of water in his own land without diminution or alteration. But an adverse right may exist, founded on the occupation of another, and though the stream be either diminished in quantity or even corrupted in quality as by means of the exercise of certain trades, yet if the occupation of the party so taking or using it, have existed for so long a time as may raise the presumption of a grant, the other party whose land is below must take the stream subject to such adverse right. I take it that twenty years exclusive enjoyment of the water in any particular manner affords a conclusive presumption of right in the party so enjoying it derived from grant or act of parliament."

In *Balston* v. *Benstead*, 1 *Campbell* 463, *Lord Ellenborough* recognizes the same rule as to time.

In *Ingraham* v. *Hutchinson*, 2 *Con. Rep.* 584, *Swift*, C. J.,

says, " By the common law every person owning lands on the banks of rivers has a right to the use of the water in its natural stream without diminution or alteration, that is, he has a right that it should flow *ubi currere solebat,* and if any person on the river above him interrupts or diverts the course of the water to his prejudice an action will lie. But a special right different from the general one may be acquired by an adjoining proprietor by grant or by such length of time as will furnish presumptive evidence of a grant. In England it has been decided that twenty years exclusive enjoyment of water in a particular manner affords a conclusive presumption of right in the party enjoying it, derived from some individual having the power to make it, or from the Legislature; and in this State fifteen years exclusive enjoyment will furnish the same evidence."

*Gould,* Justice, says, If the defendant had diverted the stream from the plaintiff's land, or if the plaintiff had by obstructions cast it back and overflowed the land of the defendant, and the injury had been acquiesced in for fifteen years on either side, a grant might now be presumed in favor of the one or the other of the parties.

In *Sherwood* v. *Burr,* 4 *Day* 244, *Mitchell,* C. J. says, " In analogy to the statute of limitations which gives title to land by fifteen years adverse possession, the plaintiff must be considered as having acquired a right to use and improve the stream of water in the manner it has been improved for thirty or forty years. If necessary to support the plaintiff's title to the privilege, the law would presume a grant even from the defendants or those under whom they held. Twenty years undisputed possession of any easement appurtenant to land is sufficient in England to raise the presumption of a grant. The defendants claim the use of this right for ten years only to have been in them. If fifteen years exclusive adverse possession is the least term of time which can give title to freehold estate, surely as long quiet enjoyment will be required to create a title of the nature in question."

In the case of *Vooght* v. *Winch*, 2 *Barnerwall and Alderson* 662, the Judge had charged the jury that in the case of all streams of water, the use of which furnished beneficial enjoyment to any individual, the material thing to be attended to was what had been the actual possession and enjoyment by such person for the last twenty years—and that if water had in fact been enjoyed during that period to a certain extent of supply or at a certain level, no private person was at liberty to do any act which altered that state and condition for the purpose of improving his own estate and that the rule applied equally to all streams whether navigable or not. The court of K. B. held that the rule did not apply to navigable rivers and in this respect the direction of the Judge was erroneous, but did not in the slightest degree call in question the application of the rule to private innavigable streams either as to principle or time.

In *Chalker and others* v. *Dickinson and others*, 1 *Con. Rep.* 382, *Swift*, C. J. delivering the opinion of the court says, " In England by stat 21 *Jac.* 1, it was enacted that no person that has any right or title of entry shall enter but within twenty years next after his right or title shall accrue. Courts extended the principle of this statute to similar cases within the same reason. A like statute was at an early period enacted in this country limiting the right of entry to fifteen years and courts extended the principle to similar cases. Hence it became an established rule of the common law that easements may be acquired by uninterrupted possession for fifteen years, such as rights of way, flowing another's land, diverting water courses, fisheries and the like. But in every case of this description, the use and possession in the first instance are an usurpation of the rights of some other person, and an action would always lie till the fifteen years are elapsed. It is considered that no man would permit another thus to occupy and possess his right without a grant and in all these cases the law presumes there has been a grant, for the idea is not entertained that

a man by being a trespasser for fifteen years can by the common law acquire a right. But as the grant depends on a presumption of law it is always competent to rebut it by proof of such circumstances as shew no grant could have been made. The general rule then is that certain rights may be acquired against individuals by fifteen years uninterrupted possession and use, unanswered and unexplained."

In 3 *Caines* 319, *Justice Thomson* states the presumption from twenty years possession as mentioned by Lord Ellenborough in the passage already referred to and calls it an "undeniable principle of the common law."

Lord Erskine, speaking as Chancellor, in 12 *Vezey* 265, on the doctrine of presumption and the effect of long use, puts on the same ground, the use of water, and light, and the right of way. Twenty years of uninterrupted and adverse enjoyment of a right of way and of ancient lights is the fixed period from which a grant will be presumed. Without entering here into a minute review of the cases, the position will be found fully supported by *Darwin* v. *Upton*, 2 *Saunders* 175, *b. note. Campbell* v. *Wilson*, 3 *East.* 294.

In *Gayetty* v. *Bethune*, 14 *Mass. Rep.* 49, *Parker, C. J.* speaking on a question of way says—" No time before the division of the estate among the heirs could be taken into view for the purpose [of presuming a grant] because as has been before observed there could not have been before that time any adverse possession, the whole being in Bethune or his grantors. And it is adverse possession only upon which a presumption of a grant can arise, or a possession claimed or used as a rightful possession. Since that period sufficient time has not elapsed to justify the presumption of a grant from English and wife; no period short of twenty years has been allowed sufficient for this purpose in this country, nor has it been definitively settled that any shorter period will suffice in England."

In the case of *Wright* v. *Howard*, in February, 1823,

*Simons and Stuart's Rep.* 190, the Vice Chancellor of England *Sr. John Leach*, says:—"*Prima facie* the proprietor of each bank of a stream is the proprietor of half the land covered by the stream, but there is no property in the water. Every proprietor has an equal right to use the water which flows in the stream, and consequently no proprietor can have the right to use the water to the prejudice of any other proprietor. Without the consent of the other proprietors who may be affected by his operations no proprietor can either diminish the quantity of water which would otherwise descend to the proprietor below, nor throw the water back upon the proprietor above. Every proprietor who claims a right either to throw the water back above, or to diminish the quantity of water which is to descend below, must in order to maintain his claim either prove an actual grant or licence from the proprietors affected by his operations, or must prove an uninterrupted enjoyment of twenty years, which term of twenty years is now adopted upon a principle of general convenience as affording conclusive presumption of a grant."

There is nothing in the cases read at the bar to impugn this doctrine. *Oswald* v. *Leigh*, 1 *T. R.* 270, was debt on a bond and the defence relied on, presumption of payment. No demand had been made for nineteen years and a half; the parties were men of fortune, resided in England and lived on terms of intimacy, yet the jury found for the plaintiffs and the verdict was sustained in *K. B. Buller* said, he had been always of opinion that no less time than twenty years could of itself form a presumption that a bond had been paid. In those cases where satisfaction had been presumed within a less period, some other evidence had been given in favor of such a presumption, such as having settled an account in the intermediate time, without any notice having been taken of such a demand. In the case of *Colsel* v. *Budd*, in 1807, 1 *Camp. N. P.* 27, very nearly twenty years had elapsed after the bond became payable and before

the suit, and the defendant undertook, but failed, to shew a settlement of accounts between the parties when a sum of money had been paid sufficient to cover the demand on the bond. *Lord Ellenborough* said, if it had been proved that the parties had accounted together after the money became payable it might have been inferred that it was included in the settlement, but as there is no evidence of this and as twenty years have not elapsed since the bond was forfeited, it cannot be considered as discharged.

The cases of *Jackson* v. *M'Call,* 10 *John,* 377, and *Jackson* v. *Pratt, ibid.* 381, can have no just influence on the subject before us. The former evinces the general undisputed position that a patent or deed may be presumed. In the latter, where a mortgage of forty years old was set up, to put which in force no steps had been taken nor had any demand under it been made for upwards of nineteen years before the trial, the court held that from the payments which had been made at that time, and before, and the silence of any claim under it, the jury would have been warranted to have presumed it satisfied.

The Winchelsea causes 4 *Burr.* 1962, afford no rule or analogy for the present question. The whole matter was there subject to the discretion of the court : they were about to fix a rule where avowedly no rule existed. Even there, however, the court say twenty years possession must elapse before they will presume a right in corporators to hold their corporate offices, and before they will refuse to disturb the peaceable possession of a franchise. But they do not say that they will at any period or under any circumstances under twenty years, presume such right; they only say that "within twenty years their granting the rule or refusing to grant it, would depend on the particular circumstances of the case, which should be in question before them." In other words, that the granting the rule to shew cause why an information in nature of a *quo warranto* should not be filed, was not a mere matter of course ; that after twenty years

peaceable possession they would not grant it; nor would they, within that time, unless just circumstances to induce an inquiry should be presented to them.

From this review of the cases, and I find none that sustains a contrary doctrine, it is in my opinion clearly shewn that, in point of time, twenty years of adverse possession of a diverted water course are indispensably necessary to defeat the proprietor of the ancient channel and to repel his reclamation of his right. The law in this respect as laid down to the jury was unquestionably sound. If the jury found from the evidence that the original diversion of the water had been made within twenty years; and upon this head there was a conflict of testimony; in which to set that of the defendants in the least favorable light it was not so much overbalanced as to induce or justify us to interfere with the verdict; or if the jury believed that the diversion had been made under the authority and permission of Walter Smith, and with repeated recognition of his right during the time of Clark and until the sheriff's sale in 1807, and about fifteen years before the commencement of the action; the jury had not a foundation broad enough in point of time on which to raise the superstructure of a grant. By the circumstances of time then, they were not warranted in presuming against the claim of the defendants.

In the remarks which I have made, it is perceived, I have confined my view to a consideration of time as a circumstance, an independent or disconnected circumstance, on which the presumption of a grant may be raised. In the case of *Bealey* v. *Shaw*, Lord Ellenborough is reported to have said that less than twenty years enjoyment may or may not afford such a presumption according as it is attended with circumstances to support or rebut the right. This expression unfortunately is vague and defective in precision. If by *circumstances* are here meant facts sufficient in themselves to sustain a presumption or rebut, and bar a right; or if he meant to say there may be facts from which

such a presumption will result, or whereby a right may be rebutted or barred although twenty years have not passed, as for instance, where a fraudulent concealment or misrepresentation has been made; where a trustee or other person was bound to convey; where a party in possession was entitled to a conveyance under an agreement or trust; where an act ought to have been done which therefore in many instances the law will presume done; or something is shewn irreconcileable with truth and nature without the existence of a grant; the position is correct, and here these circumstances, not the time, are the basis of the presumption or of the bar. If by *circumstances* anything else be meant, the position is unsupported by analogy, adverse to the steady current of authorities and repugnant to the opinion of the same eminent judge in the subsequent case of *Den* v. *Wilson,* 11 *East.* 56, which will be hereafter noticed.

Admitting then that such circumstances may exist, let us look into the evidence in the case before us and see if there be such here; if there be circumstances which in point of law would have warranted the jury in presuming against the claim of the defendants, and should consequently have called for such direction to them from the court.

The whole benefit of the rule which enables the court to regard with a more favorable eye the presumption which supports, than that which defeats, a right, cannot I think, be yielded to the plaintiff as claimed by his counsel. The plaintiff relies on presumptions, not to support, but to give, a right, not to strengthen or sustain an acknowledged right, but to make that right which would otherwise be usurpation. He relies on them too, to defeat the undisputed right which was once held, and without the claims and right, if such they be, of the plaintiff, would still be held to the flow of the water along its ancient and natural bed.

The facts urged by the plaintiff are, the submission of Walter Smith and the present defendants to the diversion of the water from its ancient channel, in other words, to the

possession of their property by others; the silence of Smith when the mill was purchased from the Sheriff by Laing in 1807, and when it passed by purchase and sale through other hands; and the acquiescence by Walter Smith in the use of the diverted stream by Breath after he refused to pay rent for the new pond.

The submission of the owners of the ancient channel to the diversion of the water, can avail the plaintiff nothing. No instance exists in which the possession of real property with the knowledge and without a murmur of the owner has been held, short of the period of limitation, to destroy his right. The law has yielded him twenty years and told him his right shall for that period retain its full vigor, and may be asserted with equal force in the last hour as in the first. Short of that period then, a mere submission cannot, by presumption, deprive the owner of his property. Of this opinion were the court of *K. B.* in the case of *Den* v. *Wilson*, and Lord Ellenborough must have considered this sort of acquiescence as not one of the *circumstances* alluded to by him in the case of *Bealey* v. *Shaw*, ejectment was brought by the lord of the manor to recover a copyhold estate and a small parcel of the waste land of the manor which had been enclosed by the defendant. The enclosure, which was small, appeared to have been taken in from the waste land about twelve or thirteen years before, by the defendant, and annexed to some other land belonging to him. But the lord's steward was proved to have seen this inclosure from time to time after it was made, (the same lord and steward continuing all the time,) and no evidence of any objection made; Lord Ellenborough and the court held that the continual view of the steward acting under the same lord for that period without objection might be sufficient for the jury to presume a license, and hence refuse to consider the defendant as a trespasser, which license however the lord might countermand and then recover posses-

sion, but that a grant from the lord would not be presumed within twelve or thirteen years.

The silence of Walter Smith and his omission to notify Laing, Wooley and Breath, of his right. It is not clear from the evidence, that the water flowed exclusively in the diverted channel at the sheriff's sale. For two previous months Clark's paper-mill had not been wrought, and one of the witnesses (William Smith) says, at the time, the little stream ran some into the new pond and some into the ditch leading to the plaintiff's pond. No evidence is given that Walter Smith was present at either of the sales, or at any treaty or negotiation leading to them, or that he knew of them until after they had occurred, or that he was in the slightest degree consulted respecting them—and as to the expenditure of money on the property, nothing is shewn after the erection of the mill by Clark, except in the article of purchase, unless it be in some inconsiderable repairs of which Smith may well have known nothing. Under such circumstances no case even in a court of equity has, it is believed, presumed against or defeated the right of the owner. In *Slover* v. *Barker*, 6 *John. Ch. Rep.* 168, *Ch. Kent* states the rule in equity to be " that where one having title acquiesces knowingly and freely in the disposition of his property for a valuable consideration by a person pretending to title and having color of title, he shall be bound by that disposition of the property and especially if he encourage the parties to deal with each other in such sale and purchase." In *Brinkerhoff* v. *Lansing*, 4 *ibid.* 70, he lays down the rule with respect to incumbrancers to be that if a prior incumbrancer be a witness to a subsequent conveyance or incumbrance and knowing its contents does not disclose the fact of his own incumbrance but intentionally suffers the party dealing with his debtor to remain in ignorance, he shall have his incumbrance postponed or barred, because he is thereby auxiliary to an act of fraud—and even this rule he holds does not extend to cases of prior

registered mortgages. "The mere silence of a mortgagor
when he is present at the execution of a subsequent purchase
or incumbrance is not sufficient to affect his right unless
that silence was intentional and for the purpose of deception.
That inference is not to be drawn from silence alone under
the operation of our register act. There must be active
fraud charged and proved, such as false representations, or
denial upon inquiry, or artful assurances of good title or
deceptive silence when information is asked. The burden
of the charge and of the proof lies upon the purchaser. He
must make out the fraud and the mortgagee is to be pre-
sumed innocent, until proved to be gulity." In the case of
*Holmes* v. *Custance*, 12 *Vez.* 279, legacies were given of
$100 a piece to the children of Robert Holmes. Under an
impression from strong circumstances that the testator had
meant George Holmes and by mistake inserted Robert, the
executor paid one of the legacies to a trustee of one of the
children of George and took his receipt, to which the plain-
tiff, one of the children of Robert, was a subscribing wit-
ness, who afterwards filed a bill for the legacy. The Master
of the Rolls sustained the claim. "I have some doubt,"
says he, "as to the effect of the paper that is produced.
The way in which that struck me is as a fraud on the other
party if the payment was made on the admission of the
plaintiff that he was not the person. But it cannot have
that effect for they proceeded without any communication
with that person. Their payment or resolution to pay did
not originate in any communication with him; but they
exercised their own judgment and then it comes to this only
that the plaintiff did not resist. There must be either some-
thing of a mistake or a fraud by him in not setting up his
claim. Clearly this does not amount to a release by him
nor any fraud in him. It does not appear that he repre-
sented that his father was not the person intended. They
took it upon themselves and he acquiesced. There is not
enough therefore to bar the claim." With what semblance

of propriety can the purchaser complain who seeing the water diverted from its ancient course, flowing along an artificial channel (if such were the case) by a dam erected not on the land of Clark, made no inquiry whether such diversion were rightful, and by grant or authority from the owners of the ancient bed.

The omission of Smith to resume the water when Breath declined to pay rent for the new pond, is not a circumstance which will legally warrant the presumption required by the plaintiff. It may well be accounted for on obvious and natural grounds. The flow of the water in its ancient course would have produced no advantage or convenience to him. He had declared the water might be diverted to Clark's mill until he or his heirs should erect a mill and need it, and he may not have felt at liberty to gainsay his word. Aside however from these considerations, there is nothing in the fact. In legal effect it is no stronger than the silence already considered. It is no act done acknowledging the right of Breath to divert the water. It is no omission by Smith of an act, when an act was indispensible to the support and protection of his right. In the case of *Eldridge* v. *Knott and others* in 1773, *Cowp.* 214, the trespass complained of was for taking a distress for quit rents due to the lord in right of a manor. The rents had been regularly paid until 1736. In that year the lord had sued the tenant for cutting two trees growing on the tenement, and a verdict was rendered for the tenant, after which the owner of the tenement had refused to pay this quit rent or to attend the manor court. In 1738 a demand of the rent was made and refused, after which no further demand or payment had been made. On these facts *Baron Eyre* was of opinion that though the claim was not barred by the statute of limitations, yet that a non-payment and acquiescence for thirty-seven years was a sufficient ground to presume a release or extinguishment of the quit rents, and left it to the jury to say whether upon the evidence they would or would not presume they were

released or extinguished, and the jury found they were. But *Lord Mansfield* and the court of *K. B.* set aside the verdict; and although holding there were many cases where from a principle of quieting possession, the court had thought a jury should presume anything to support a length of possession, yet this case, they said, stood without a pretence for supposing a release or extinguishment; that the demand, refusal, acquiescence and omission to enforce payment, were in fact nothing; that the case stood on mere length of time, which was insufficient within the period fixed by the statute.

On the whole, I am of opinion, the case was fairly put by the judge to the jury, the verdict is not against the evidence and ought therefore to be sustained.

ROSSELL, J. The counsel for the plaintiff relies to support his motion for a new trial on Phillip's evidence, *Presumption*, 118, 119, 121. *Cowper*, 132. 1 *Term Rept's*. 272. 4 *Burrow* 1962. 10 *Johnson* 377, 380, 381, 387.

In the pages cited from Phillips, it is laid down, " There are many cases not within the statute of limitations where courts of justice from a principle of quieting possessions have held that juries ought to presume the most solemn instruments to support a long uninterrupted possession; all shall be presumed to have been solemnly done, rather than ancient grants should be called in question." Again, " the presumption of a deed from long usage is for the furtherance of justice and for the sake of peace." So in the case of a bond which has laid dormant for twenty years. " Forbearance for so long a time *unexplained,* is a circumstance from which a jury may and ought to infer that the bond has been satisfied;" and adds the same authority, " It has been sometimes said, that payment may be presumed even within that time; *citing Cowper*, 109. But this is to be understood with reference to those cases where there has been some other evidence to raise such presumption; or the presumption may be answered by proof of other circumstances explaining why an earlier demand was not made." In 118,

he adds "although it may be presumed that a bond has been satisfied after twenty years unexplained, yet it has been held that in the case a quit rent claimed by the lord of the manor, proof by the tenant that no demand had been made on him for near forty years, was not sufficient to presume a release, for in this case a de/d would be necessary and it would be too much to presume a deed from the mere fact that the quit rent was not demanded." So, in 121, "adverse possession for a shorter period than twenty years will not afford ground for such presumption, and there ought to be some other evidence in support of the right. A licence may be proved within that time, (under circumstances) though in general a grant cannot."

In 121 the authority continues, "In the cases that have been mentioned, the usage for twenty years, was considered as strong presumptive evidence of a grant or agreement; but it is only presumptive, and it may be shewn that the usage was limited, modified, bad in its commencement, or originated in a mistake."

1 *Durnford & East.* 107, was an action on a bond on which no demand had been made for 19 years and a half— and a verdict for the plaintiff—defendant applied for a new trial. The court inclining to believe that the truth of the case was with the defendant desired him to make an affidavit, which on being read and not appearing satisfactory they discharged the rule and would not permit it to go to a jury. Same book 272, it is said, if a bond has lain dormant for twenty years, it shall be presumed paid. The presumption of payment on a bond, in a less time than twenty years, must depend on some evidence, or length of time less than twenty years would not be sufficient.

*Cowper*, 102, 8, 9, the marginal note says, "a grant or charter from the crown which ought to be a matter of record, may *under circumstances* be presumed though within the time of legal memory." In this case the presumption was founded on a possession of three hundred and fifty years.

Campbell *v.* Smiths.

Lord Mansfield says, that *all evidence is according to the subject matter to which it is applied.* There is a great difference between *length of time* which operates as a bar, and by which a jury is concluded, and that which is only by way of evidence. There is no statute of limitation that bars an action on a bond; but there is a time when a jury may presume the debt discharged, as where no interest appears to have been paid for sixteen years. But if a witness is produced to prove the *contrary* by shewing the party was not in circumstances to pay or had acknowledged the debt, the jury must say the *contrary.*

10 *Johnson,* 377, (so much relied on by the counsel for the plaintiff on the argument) does not in the least degree impugn the doctrine laid down by the foregoing authorities, but is in perfect accordance with them, and cannot give, as I understand it, a shadow of support to the motion for a new trial.

This was an action of ejectment brought on the demise of John McDonald to recover part of two hundred acres of land confessedly in the possession of McCall the defendant. The cause was tried before Justice Yates, and a verdict given for the defendant. On a rule to shew cause why a new trial should not be had, the case came before the Supreme Court, by which it appeared, the plaintiff claimed the premises by virtue of an act passed for the relief of D. McDonald, by which all the right of the state was vested in him to two hundred acres of land allotted by the council to one John Provost in the year 1764, after the same had been surveyed for him by order of the then existing government, which order and survey referred to in the act, were produced in court, and sworn to by a witness as containing the premises in question.

Several witnesses on the part of defendant, testified that the line now contended for had been known by them for 41 years, that John McDonald, father to the lessor, occupied, claimed and held to that line, and made a division fence

13

Campbell *v.* Smiths.

there; that the land was surveyed for the King's soldiers, and the said McDonald was with the surveyors; that he had told witness so in 1776; that John McDonald died about eighteen years ago in possession, had built a part of the line fence, and his son John the lessor, then came into possession and had built a stone wall on the same line.

The Supreme Court held, that the confessions of McDonald the father, were conclusive on his son the lessor, and the jury might presume an ancient deed to him, and as the occupants on both sides had held to this line for forty-one years previous to the trial, and especially the ancestor of the plaintiff, and the plaintiff himself by building a stone wall on it had recognized that as the true line, the opinion of the Judge at the circuit was correct and that line ought not to be disturbed.

So in the case cited from 10 *Johnson* 387, *Chief Justice Kent's opinion.* The only part which has the least bearing on the present case respects an old and out-standing mortgage given in evidence by the defendant. The Chief Justice says, " the mortgage was not to be received as a subsisting out-standing title; assuming that Williams by means of the possession of the mortgage was to be considered as the agent of the mortgagees, yet no steps had been taken to put the mortgage in force nor had any demand been made for upwards of nineteen years previous to the trial, and from the payments which had been made at that time and before, and the silence of any claim under it the jury would have been well warranted to have presumed it satisfied. The defendant did not set up any title under it but he set up a title under Williams; and it has been settled, that a stranger not claiming title under a mortgage was not permitted to set it up to defeat a legal title. The plaintiff is entitled to judgment.

In all the foregoing authorities, I confess I cannot glean aught to give support to the present application.

The substance of the whole as applicable to the present

case is, that grants have been presumed after three hundred and fifty years quiet enjoyment, deeds after forty years acquiescence of the party and his ancestor, mortgages on which payments had been made more than nineteen years before, and there was no after demand might be presumed satisfied, usages or franchises would not be disturbed after twenty years enjoyment, and a bond on which no payment had been made for sixteen years, might be presumed paid. But Phillips, after citing most of those cases, adds, these are cases of presumptive evidence of a grant or agreement but only *presumptive,* and where there was *some other evidence* to raise such presumption, which may be answered by shewing the usage limited, modified or bad in its commencement. And *Lord Mansfield* in *Cowper* 214, in the case of *Eldridge* v. *Knott,* and a verdict for plaintiff, says, " there is no instance of setting up time, within that limited by the statute, as a bar; mere length of time ought not to be so received, and in this case there is no pretence for supposing a release or extinguishment, and it ought not to have been left to a presumption of law within a less time than the period fixed by the statute." And *Aston, Justice,* added, " here the presumption was to defeat the lord, and mere length of time unaccompanied with other circumstances is not sufficient." In these opinions the whole court concurred and a new trial was ordered. The case is in principle similar to the one before us. The person in possession posecuted the lord for a trespass and relied on time only, twenty-seven years, without demand, to support him. The Judge left it to the jury to presume or not a release or extinguishment of the quit rent, and on verdict found for the plaintiff, a new trial was ordered.

So in this case, the right was acknowledged to be originally in the Smiths who, it was abundantly proved, permitted Clark to enjoy the privilege for a time, and who had repeatedly during his life so declared it. To deprive the defendants of this right attached to and sacred as their

freehold, the plaintiff relied only on about fifteen years' possession without a particle of other evidence on which to found the presumption he claims. It was in proof that this mill had been at different times idle and neglected; had repeatedly changed owners; that the executors of a late owner resided in New York, and had sold the premises to Campbell; but it was not even pretended that the defendants were ever privy to, or made acquainted with the terms of sale, or indeed any of the sales themselves, unless Clark's, which was a public one. And the purchaser from a well known rule was bound to examine the whole title. And the other purchasers had probably done so, for we do not hear a whisper of a right to this water from any of them.

I have examined the whole of this case, and the authorities relied on by the counsel for the plaintiff, anxious that if in the haste of a trial at circuit he had been deprived of a single right, it should be restored to him. But the most diligent research has only served to strengthen my opinion of the correctness of the whole of the proceedings, and I am of opinion that the plaintiff take nothing by his motion.

FORD, J., concurred.

Judgment for the defendants.