# CASES HEARD AND DETERMINED

# CIRCUIT COURTS·

OF THE

## STATE OF OREGON.

---

CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1867.

## THE OREGON IRON CO. *v.* JOHN C. TRULLENGER.

CONSTRUCTION.—A grant by the words, "To flow back the water to the foot of the present wheel " * ˟ ˟ * ˟ " and the right at all times to use all the water which naturally flows below said mill :" *Held*, to mean the water as it flows from the mill-wheel, the mill being in operation.

IDEM.—It is necessary to give consideration to all parts of a deed in order to ascertain what was the intention of the parties; and for this purpose, surrounding circumstances within the knowledge of the parties at the time should be considered.

SERVITUDES.—The purchaser of part of an estate takes it with the servitudes that are visibly attached at the time of the sale.

RIGHT TO POND WATER.—The right to use water necessarily implies a right to dam and to detain it. One exercising this right can only *detain* it. He cannot divert it. He must not detain it unreasonably, or let it off in unreasonable quantities.

IDEM.—What is unreasonable detention is, in general, a question of fact.

It appears by the pleadings, that on the twenty-sixth of January, 1864, the defendant was owner of the land over which Sucker Creek flows, from Sucker Lake to the Wallamet River, and had then a mill and dam in use on said stream, a short distance below Sucker Lake.

It was admitted on the argument, that defendant's mill was propelled by a large breast-wheel, upon which water

was then and is now discharged at different elevations, according to the stage of water and condition of the reservoir, ranging from seven feet above the natural surface of the lake, downward.

The defendant's dam was so situated as to be capable of raising Sucker Lake seven feet above its natural surface, thus creating a reservoir of eight or ten hundred acres. And the condition and construction of the defendant's mill was such that it could be properly worked when the water of the lake was drawn down to a point one or two feet above the natural surface of the lake; and the defendant's flume was so constructed that water could be drawn down to that point. There was fall enough in the creek for another water power "below the foot of the defendant's wheel."

On that day, the twenty-sixth of January, 1864, the defendant sold to H. D. Green, the plaintiff's grantor, a parcel of land lying on the creek near its mouth and below the defendant's mill, and a right of water.

The deed executed by the defendant to H. D. Green, recites that said Green "contemplates erecting stacks, furnaces and machinery for the purposes of reducing iron and other ores, for which he desired the use of the waters of the creek." These stacks, furnaces and machinery are now erected at a cost of $100,000, or more, and belong to the plaintiff, and the machinery is propelled by the waters of the creek, the plaintiff having a dam and reservoir capable of retaining water sufficient to drive that machinery twenty-four hours, though the defendant's gates be closed. This dam does not back water so far as to the foot of the defendant's wheel. This deed conveys to Green a parcel of land near the mouth of the creek, and below the defendant's dam and mill, and it conveys the right to the water, in the following terms: "Together with all the water privilege on Sucker Creek, the outlet of Sucker Lake, which can be obtained by building a dam above the land sold, as above stated, and below the" * * * (defendant's) "mill at a point to be selected by the said Green, his heirs and assigns, he having the right, which is hereby granted, to con-

struct and maintain a dam of any length and height, and to flow back the water to the foot of the present overshotwheel of the mill, and the right at all times to use all the water which naturally flows below said mill in said stream, unobstructed by the parties of the first part, their heirs and assigns."

It appears from the proofs and admissions, that the creek is, in the dry season, but a small stream, which in its natural condition is for a short portion of the year insufficient to drive either the mill of the defendant or the machinery of the plaintiff. And that by means of using the lake as a reservoir, and retaining water during the wet season which would be of no use at that time in propelling the machinery of either party, the value and usefulness of the stream to both parties is greatly enhanced. But that the quantity thus saved was not sufficient to fully supply either party during the last dry season. That the natural flow of the stream is liable to become too small for either, by the heat and drouth of summer, and also by hard freezing in the winter.

The plaintiff complains that during the dry weather of the past summer, the defendant has ponded the water back so as to render it impossible for the plaintiff to operate his machinery, and that the defendant has let the water down from his gates at irregular intervals, and in irregular and improper quantities, causing unnecessary waste of the water, and interruption to the plaintiff's business of smelting ores.

The plaintiff also claims, that by the construction of the deed, the defendant had no right to pond the water of Sucker Creek; but that the plaintiff has a right that it should flow at all times, as in a state of nature, to the plaintiff's reservoir, without being stopped or ponded by the defendant. The plaintiff also claims that the defendant is threatening to build his dam higher than it was at the time of executing the deed to Green, and thus to further obstruct the flow of the water.

The evidence showed that the value of the water power to each of the parties was greatly enhanced by ponding

Sucker Lake, and would be nearly worthless without it; that in dry weather the stream afforded but three to four inches of water under pressure of thirty feet; that at the date of the deed the defendant's mill required and used from thirty to sixty inches of water under thirty feet pressure; that the water required to run the defendant's mill ten hours will run the plaintiff's machinery twenty-four hours; that the defendant's mill used at that time twenty-five cubic feet per second; that running the defendant's mill twelve hours, in times of low water, will draw down the lake three fourths of an inch; that the lake, when fully ponded, is of capacity, together with the natural flow of water into it, to run the defendant's mill twelve hours a day for ten months, and that the water can be drawn down each dry season several feet without serious loss to the defendant; that during the years in which the mill has been operated, working the mill has never required the pond to be drawn down more than two feet.

*Logan & Shattuck*, for the plaintiff.

*Mitchell & Dolph*, for the defendant.

UPTON, J. The principal question in this case arises upon the construction of the deed from the defendant to Green, in determining what right and privileges were conveyed.

If no reference had been made to the mill or dam, the language of the deed might be construed to convey a right to all the power afforded by the natural flow at all times. But reference in the deed to the defendant's mill-dam and wheel, confines the right to flow back the water to particular limits. And I think, upon the same principle and with equal certainty, the reference to defendant's mill and wheel limits the purchase, and reserves to the plaintiff rights that otherwise would have passed. The instrument, taken as a whole, shows the intention of the parties to have been, that the defendant should retain such right in the water as was necessary to a reasonable use of his mill. It is a pertinent matter, that the deed discloses on its face the intended use

of the water by each party. What might or might not be a reasonable use of the water by the defendant may depend very much upon the purposes to which it is to be applied by those occupying below him, especially since that purpose is expressed in the deed. Thus, if the contemplated business below required that the plaintiff be constantly supplied with a small stream, and there was no possibility of constructing reservoirs by the plaintiff to equalize the flow coming from the mill, the defendant might, in a time of scarcity, be obliged to desist from interrupting the flow, on the principle that one may not so use even his own property as to unreasonably discommode others.

The words, "The right at all times to use all the water which naturally flows below said mill," if they stood alone, might be of doubtful construction, and the whole sentence in which they occur, taken independently of the rest of the instrument, might, without much violence or strictness, be construed to convey an absolute right to have the water flow at all seasons of the year and at all hours of the day, in the precise quantity it would have flowed in a state of nature.

But it is necessary to give consideration to all parts of the instrument, in order to ascertain what was really the intent of the parties. (*Marvin* v. *Stone*, 2 Cow. 781.) For this purpose, the surrounding circumstances within the knowledge of the parties at the time should be considered. (*Blossom* v. *Griffin*, 3 Kernan, 569.)

It will be presumed that the parties were contracting with knowledge of the situation of the property; and it is evident that they did not intend to abandon the advantages derived from using the lake as a reservoir. The terms of the contract exclude the idea that the defendant was expected to abandon the use of his mill; but it seems to have been contemplated that the defendant could and would so use his mill that the flow of water below it would supply the requirements of the purchaser's business, whenever there was sufficient water. It is admitted that the plaintiff has a reservoir of sufficient capacity; that if, during each day, the defendant lets down sufficient water for the twenty-

four hours, the plaintiff can retain and use it without being injured because of temporary interruption of the flow of the stream. Accordingly, if the defendant lets down water at regular intervals in quantities such as the plaintiff is entitled to, no harm can be done by the daily closing of the gates. But the plaintiff claims that by the words "water which naturally flows," the plaintiff became entitled to all the water that would have flowed there in a state of nature; that the defendant's ponding up the water may increase the evaporation and diminish the stream. I think that construction is not a necessary import of the words used. There is something other than a state of nature contemplated and expressed when we add to the words, "the water which naturally flows," the words, *"below the mill."* There is a difference between a grant of the "quantity of water that would flow in a state of nature" and "the quantity which naturally flows below a mill."

Had the defendant sold all the land he owned below "the foot of the wheel" down to the Wallamet River, with all its hereditaments and appurtenances, I think the purchaser would have acquired all the rights that are conveyed by this deed. But in that case the purchaser would have taken subject to all the burdens and servitudes connected with the use of the grantor's mill. "The purchaser of part of an estate takes it with the servitudes that are visibly attached at the time of the sale." (*Lampman* v. *Milks*, 7 Smith, 507.)

But it seems too evident, from the terms of the contract, that the parties intended a continuation of the use of defendant's mill to admit of argument. The purchaser evidently took the property subject to a right in the defendant to make such use of the lake as had been theretofore made, if not seriously detrimental to the purchaser.

And if there had been no relation of grantor and grantee, the owner of the lands above would have a right to construct a dam, and to make use of surplus water to fill the pond when the detention would not work actual injury or damage to his neighbor. "The right to use necessarily implies the right to dam and to detain the water." (*Van Hoesen* v.

*Coventry,* 10 Barb. 520,) "While each proprietor has a right to detain the water as it passes through his land long enough for the proper and profitable enjoyment of it; he can only *detain* it; he cannot *divert* it. (*Platt* v. *Johnson,* 15 John. 213, 218.)

He must not detain it "unreasonably, or let it off in unusual quantities to the annoyance of his neighbor." (3 Kent's Com. 440; *Webb* v. *The Portland M. Co.,* 3 Sumner, 189.)

What an unreasonable detention is, in general, a question of fact. I think it is not an unreasonable detention to fill the defendant's pond in the wet season with surplus water, that could not then be available to the plaintiff, and to discharge it in the dry season, in proper quantities, when its flow must necessarily be advantageous to the plaintiff. By unavoidable construction of the contract, the defendant has a right to use his mill, and the rule is that he must so use his property as not to injure others. He has a right at proper times to detain the surplus water by ponding the lake. I think he has by his deed limited himself to such times; and that he has no·right to accumulate and retain water at times when it is needed for the use of plaintiff's works. I think he may at all times retain the water at the height at which it had been constantly retained, as indicated by the dam and flume up to the time of Green's purchase; namely, at the height of one foot above the surface of the lake; both because that was the condition of things at the time the purchase was made, and because it does not appear that such detention would make the flow of the stream, at any time of scarcity of water, materially less than it would have been had no dam been built. The plaintiff is entitled in low water to have sufficient water to drive the machinery, etc., mentioned in the deed, if the natural flow of the stream, together with surplus water used in running the mill, would produce so much, and if it would not, then so much as the natural flow of the stream would produce, and the defendant has no right to so use his dam or gates as to prevent this. This amount of water should be supplied at such intervals or with such constancy as to enable the

plaintiff, by means of his reservoir, to have the regular use of it.

---

(*a.*) The following decree was entered: It is ordered, adjudged and decreed that said John C. Trullenger is owner in fee of all the water power created, or that can be created, by the flow and fall of said Sucker Creek above said point designated as "the foot of the overshot water-wheel," and has the right to pond and raise the waters of Sucker Lake at and above his said saw-mill at all times when that can be done by means of surplus water; and that all water flowing in said creek over and above twenty-five cubic feet per second, is surplus water. And the said plaintiff is owner in fee of all the water power created, or that can be created, by the flow and fall of the said creek below said point.

It is further ordered, adjudged and decreed, that the said John C. Trullenger be and is hereby required, at all seasons of the year, to permit, at the least, as much water to flow over or through his dam, or the gates thereof, at his said saw-mill, at regular intervals of not exceeding twenty-four hours, as shall be equal to all the water that would naturally flow during the same time in said creek if no ponding or interruption existed. And whenever the water is raised or ponded in Sucker Lake so as to be more than four feet above the natural surface of said lake, said John C. Trullenger is hereby required to permit as much water so to flow in the course of each twenty-four hours as will be equal to twenty-four cubic feet per second for ten hours; that is to say, nine hundred thousand cubic feet of water during each twenty-four hours.

And it is further ordered, adjudged and decreed, that whenever said John C. Trullenger, his heirs or assigns, shall during the wet season cause the said pond, including the said Sucker Lake, to be filled and raised to its full capacity, and shall husband and use said water in a prudent manner conducive to the mutual benefit of said Trullenger and said plaintiff, said Trullenger, his heirs or assigns, shall not during such year be required to draw down said pond or lake lower than to a point four feet above the natural surface of said lake.

And it is further adjudged and decreed that the said plaintiff and the said J. C. Trullenger each pay one half the costs of this suit.

Pending this suit, an injunction was granted restraining the defendant from making certain alterations in his gates and dam, and upon the defendant's motion, the injunction was so modified "as to allow the defendant to use his saw-mill and gates as he shall desire; providing, at regular intervals, not exceeding twenty-four hours, he discharge water sufficient to supply the plaintiff's works."

The defendant was required to show cause, upon an alleged violation of the temporary injunction, and the hearing was had subsequent to the rendition of the decree, and after the close of the term.

On this hearing, it was disclosed that there were no definite monuments to indicate the point of "the natural surface of the lake," and that there was much difference of opinion among persons acquainted with the premises, as to how much of the present depth of water was artificially created. The

CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1867.

cause was pending on appeal to the supreme court when this source of uncertainty was made known, and to avoid the uncertainty, the supreme court so modified the decree as to fix the point to which the water should be drawn down each year, "Three and one half feet below the highest point to which the water shall have stood when the pond was so filled for such year." In other respects, the decree was affirmed.