RED RIVER ROLLER MILLS *vs.* CARRIE A. WRIGHT, Administratrix, etc.

30    249
82    513

## February 23, 1883.

**Riparian Owners—Construction of Grant of Use of Water of Stream.**
A grant by a riparian owner of the lower part of his land, together with the use of the water of the stream for the purpose of operating the mill of the grantee, "free from interference or detention," does not convey the use of all the water in a regular flow, or in its natural condition uninterrupted or unaffected by the reasonable use of the stream above, but the grant must be construed as subject to the reasonable use of the stream above by the grantor, leaving the question of what constitutes such reasonable use to be determined by general principles of law, independent of the grant.

**Same—Nature of Right to Use of Stream.**—The right of a riparian owner to the uninterrupted and full use of the water as it flows naturally past his land is not an absolute right, but a natural one, qualified and limited by the existence of like rights in others, and hence liable to be modified or abridged by the reasonable use of the stream by others.

**Same—Right to Deposit Waste Matter in Stream.**—The principles which govern the detention or diversion of water also govern in respect to the deposit of waste matter in the stream, viz., a reasonable use must be made and nothing more.

**Same—Reasonable Use a Question of Fact.**—The law does not lay down any fixed rule as to what constitutes a reasonable use of the water of a stream. What constitutes such a use is a question of fact, to be determined from all the circumstances of the case; but, like any other finding of fact, is subject to review, and will be set aside when not justified by the evidence.

**Same — Considerations Determining what is a Reasonable Use.**— In determining what is a reasonable use of the water of a stream, regard must be had to the subject-matter of the use; the occasion and manner of its application; its object, extent, and necessity; the nature and size of the stream; the kind of business to which it is subservient; the importance and necessity of the use claimed by one party, and the extent of the injury caused by it to others; and all other circumstances bearing upon the fitness and propriety of the use under consideration.

**Same—Evidence of Uniform Custom in Use of Streams.**—Evidence of a uniform and established custom in like cases is competent, although not conclusive, upon the question whether a use is a reasonable one, because it affords some proof of the tacit consent of all parties interested to the general convenience and necessity of such use of that which is a common right.

**Same—Burden of Proof that the Use by an Upper Owner is Reasonable.**—When it appears that the use of a stream by an upper riparian owner interferes with the reasonable use of it by a lower riparian owner to his material injury, either by the interruption, diversion, or pollution of the water, the burden is upon the former to show that his use is reasonable.

**Same—Casting Sawdust into Stream held an Improper use.**—Evidence and facts in this case considered, and *held*, not sufficient to justify the finding of the court that the use of the stream by defendant, complained of, was a reasonable one.

Appeal by plaintiff from a judgment of the district court for Otter Tail county, where the action was tried by *McKelvy*, J., without a jury.

*J. W. Mason*, for appellant.

*D. A. Secombe*, for respondent.

The rule that "every man must so use his own property as not to injure the property of another" is not absolute, but is so qualified as to allow each to make a *reasonable* use of his property, even though the other may thereby suffer some detriment. And the reasonableness of such use is a question for a jury, to be decided upon all the facts and circumstances of each particular case. *Palmer* v. *Mulligan*, 3 Caines, 307; *Platt* v. *Johnson*, 15 John. 213; *Merritt* v. *Brinkerhoff*, 17 John. 306; *Clinton* v. *Myers*, 46 N. Y. 511; *O'Riley* v. *McChesney*, 49 N. Y. 672; *Prentice* v. *Geiger*, 74 N. Y. 341; *Snow* v. *Parsons*, 28 Vt. 459; *Jacobs* v. *Allard*, 42 Vt. 303; *Hayes* v. *Waldron*, 44 N. H. 580; *Gould* v. *Boston Duck Co.*, 13 Gray, 442; *Merrifield* v. *City of Worcester*, 110 Mass. 216.

The question of the reasonableness of the defendant's use of his property in this case has been decided by the district judge, sitting in the place of a jury, and cannot be reviewed by this court. *Thomas*

v. *Brackney*, 17 Barb. 65½; *Johnson* v. *Winona & St. Peter R. Co.*, 11 Minn. 204, (296.)

MITCHELL, J. This action was brought by the plaintiff to restrain defendant's intestate from depositing, in the Red or Otter Tail river, sawdust and other refuse from his saw-mill, which floats down the river and clogs up the flume and wheel of plaintiff's flouring-mill, to its great damage and annoyance. Both parties are riparian owners upon the same stream,—the plaintiff owning and operating a flouring-mill below, and defendant a saw and shingle-mill above, by the water-power of the stream. The facts are fully and specifically stated in the findings of the court, from which it appears, in substance, that the defendant's saw and shingle-mill is constructed over the water of the river, so that, when operated, the sawdust, bark, and other refuse fall into the stream, and are carried down by the current through and into the rack and flume of plaintiff's flouring-mill, situated about 1,000 feet below, and collect therein, and retard the action of the water in passing through the flume, rendering it necessary for the plaintiff to employ extra help to keep the sawdust and refuse from its rack; and that, even with the use of such means, it still materially and seriously injures and damages plaintiff in the operation of its mill, by preventing it from operating it to its full capacity, and by rendering the flow of water unsteady and not uniform, thereby rendering it impossible at times to manufacture the best grades of flour. The damage to plaintiff from these causes is at times very serious—on one occasion, $200 in one week.

The defendant's saw and shingle-mill is so constructed that this sawdust and refuse cannot be otherwise disposed of than by permitting it to thus fall into the stream, without practically destroying its value as a water-power mill; that owing to the construction of buildings adjacent to the mill, and owing to the formation of the land in the vicinity, there is no available method by which this refuse can be otherwise disposed of, without rendering the mill, as it now stands and is constructed, useless as such; that it is the custom of others operating water-power saw-mills in this state to permit sawdust and refuse therefrom to be thrown into the streams upon which such mills

are erected. The court then finds, as a final and general conclusion of fact, that this casting or throwing of this sawdust and refuse from this saw-mill into the water by defendant, as aforesaid, is a *reasonable use* of said stream, and that in no other way could he utilize or operate his mill with profit. We have examined the testimony and are of opinion that all these findings, unless it be the final and general one, are sustained by the evidence.

It appears that the defendant's mill was built and in operation some two years before the construction of plaintiff's mill. But this fact does not give defendant any extra or special rights in the matter. It also appears that plaintiff acquired title to its mill-site through deeds from defendant's intestate and other grantors, which granted to it the right to the use of the water of the river for the purpose of operating its mill, in the following words: "And also the right perpetually to use the water from said dam and canal, free from charge or rent, or from interference or detention." These conveyances are not before us, but we must understand this clause as referring to the right to the flow of the water, from the pond and canal which supply defendant's mill, to the mill of plaintiff. We do not think the terms of this grant have any bearing upon the present case. Its effect is not to convey the use of all the water in a regular flow, or in its natural condition uninterrupted or unaffected by the reasonable use of the stream above, but the grant must be construed as subject to the reasonable use of the stream by the grantor, giving to each party a community of right to the use of the water, but leaving the question of what constitutes a lawful or reasonable use to be settled by general principles of law, independent of the grant. *Merritt* v. *Brinkerhoff*, 17 John. 306; *Haskins* v. *Haskins*, 9 Gray, 390.

The case, therefore, resolves itself into the single question, was the court below justified, under the facts, in finding that this use of the water by defendant was a lawful and reasonable one? The rules of law applicable to cases of this kind are, as settled by the authorities, as follows:

1. The general principles which govern the abstraction or diversion of water must govern in respect to the deposit of waste matter in the

stream, resulting from the process of manufacturing, viz., a *reasonable* use must be made, and nothing more. *Hayes* v. *Waldron*, 44 N. H. 380.

2. The right of a party to the uninterrupted and full use of the water as it flows naturally past his land is not an absolute right, but a natural one, qualified and limited by the existence of like rights in others. His enjoyment must necessarily be according to his opportunities, prior to those below him, and subsequent to those above him, and liable to be modified or abridged by the reasonable use of the stream by others. *Merrifield* v. *City of Worcester*, 110 Mass. 216; *Palmer* v. *Mulligan*, 3 Caines, 307; *Platt* v. *Johnson*, 15 John. 213.

3. The law does not lay down any fixed rule for determining what is a reasonable use of the water of a stream by a riparian owner. What constitutes a reasonable use is not a question of law, but of fact, to be determined by the jury or the court from all the circumstances of the case. But, like any other finding of fact, it is subject to review, and will be set aside if against the evidence or not supported by it. *Hayes* v. *Waldron, supra; O'Riley* v. *McChesney*, 49 N. Y. 672; *Prentice* v. *Geiger*, 74 N. Y. 341; *Merritt* v. *Brinkerhoff*, 17 John. 306; *Snow* v. *Parsons*, 28 Vt. 459.

4. In determining what is a reasonable use, regard must be had to the subject-matter of the use; the occasion and manner of its application; the object, extent, necessity, and duration of the use; the nature and size of the stream; the kind of business to which it is subservient; the importance and necessity of the use claimed by one party, and the extent of the injury to the other party; the state of improvement of the country in regard to mills and machinery, and the use of water as a propelling power; the general and established usages of the country in similar cases; and all the other and ever-varying circumstances of each particular case, bearing upon the question of the fitness and propriety of the use of the water under consideration. *Davis* v. *Winslow*, 51 Me. 264; *Hetrich* v. *Deachler*, 6 Pa. St. 32; *Prentice* v. *Geiger, supra; Thurber* v. *Martin*, 2 Gray, 394; *Gould* v. *Boston Duck Co.*, 13 Gray, 442; *Snow* v. *Parsons, supra;* Angell on Watercourses, § 140*d*.

5. Evidence of the uniform and general custom in like cases is competent, although, of course, not conclusive, upon the question whether a use is a reasonable one. Usage in such matters is some proof of what is considered a reasonable and proper use of that which is a common right, because it affords evidence of the tacit consent of all parties interested to the general convenience or necessity of such use. Of course, much would depend on the character and size of the stream and the uses to which it is adapted. Such evidence, however, might not be competent where the use of a navigable stream amounted to an interruption to the public right of navigation, which is always paramount to any mere private use by a riparian owner. Angell on Water-courses, § 140d, and note; *Snow* v. *Parsons, supra; Gould* v. *Boston Duck Co., supra.*

6. To these rules we think we may properly add another, viz.: Whenever it appears that any use of a stream by one riparian owner interferes with the reasonable use of the stream by a lower riparian owner, to his injury, either by the interruption, diversion, abstraction, or pollution of the water, the burden of proof is upon the former to show that his use is reasonable; and the greater the injury is to the lower owner, the greater necessity for such use must the upper owner show in order to establish its reasonableness. The reasonableness of such use must determine the right, and this must depend in a great degree upon the extent of the detriment to the riparian proprietors below.

Now, in this case, there is no question but that plaintiff's use of the stream is reasonable and lawful. It is proved and found that the injury to it by defendant's mode of using the stream is very serious, amounting in one case to $200 in seven days, or nearly $30 per day. On the other hand, defendant shows that his mill is so constructed that the sawdust and refuse cannot be otherwise disposed of, except by permitting it to fall into the stream, without practically destroying its value as a water-power mill; that owing to the construction of buildings adjacent to said mill, and the formation of the land thereabout, there is no other available method of disposing of this refuse without rendering the mill, *as it now stands and is con-*

*structed, useless as such.*   Now, if he had gone one step further, and shown that this was a proper way in which to locate and construct a saw-mill, and that there was no other feasible and practical method of doing it, we would probably not have felt warranted in disturbing the decision of the trial court; at least, if it appeared that this stream was adapted to and useful for such saw-mill purposes.   But we look in vain, either in the evidence or special findings of the court, for anything tending to show that this mill was properly located or constructed, or that there was any necessity for locating or constructing it as it now is.   In the location and construction of his mill, defendant was bound to anticipate and have regard for any reasonable use to which others might or could put the stream.   For anything that appears in the evidence, this mill could have been so constructed as to render the casting of this refuse into the water wholly unnecessary. The necessity for doing so now may be wholly the result of defendant's own wrong or negligence in constructing this mill in the manner or place he did.   If so, it will not avail him to show that he cannot use the mill, *as now located and constructed,* in any other way.

It is true, he proves, and the court finds, that it is the custom of others operating water-power saw-mills in this state to permit the sawdust and refuse to be cast into the streams upon which the mills are erected.   Even if it had appeared that this custom was uniform and well established, and prevailed under circumstances entirely like those of the present case, these facts would not necessarily have been conclusive.   But when we examine the evidence, we find that it falls very short of this.   It is very general and indefinite in its nature. Aside from a small mill on the Crow river, the only mills in the state mentioned where such custom has prevailed were at Watab, Anoka, and Minneapolis, all practically on the Mississippi river, where an entirely different state of things might and probably did exist.   It does not appear what was the character of the streams upon which this practice obtained, nor to what uses they were put, or what other interests there were to be injuriously affected by this custom.   Very much would depend upon these facts; for what might be proper and admissible on one stream, used for and adapted to certain purposes, might not be proper upon another stream, of a different character,

and used for entirely different purposes. Hence this evidence as to custom, although perhaps competent, was so indefinite as to be entitled to very little weight.

Subject to the limitations and modifications already stated, every man has a right to the natural flow of the water unpolluted past his land. This right cannot be taken away or essentially impaired by the use of the stream by another; at least, unless such use is clearly shown to be a reasonable one. In the present case it cannot be said to be shown to be reasonable, when the only occasion or necessity for it, so far as it appears, may have resulted from the mistake or carelessness of defendant in locating and constructing his mill. Therefore, while conceding that what is a reasonable use of a stream is a question of fact, yet, under the rules of law which govern the rights of riparian owners, we must hold that the finding of the court in this case, that defendant's use is a reasonable one, is not justified by the evidence.

Judgment reversed, and new trial ordered.