## SPENCE *et al.* v. McDONOUGH.

Injunction: DECREE NOT WARRANTED BY PLEADINGS AND EVIDENCE: WATERS: APPEAL. Plaintiffs in this action sought to enjoin defendant from damming and polluting the water of a stream. The real grounds of their action were that defendant had no right to dam the stream, and that he had no right to permit hogs to have free access to it. The court rendered a decree enjoining defendant "from so damming or obstructing the natural flow of the water in the creek as that the same shall become stagnant and foul in any manner, so that the water shall be unwholesome for plaintiffs. stock." *Held*—

(1) That this was an adjudication in defendant's favor that he had a right to dam the stream, and must be taken as the law of the case as against plaintiffs, since they do not appeal.

(2) That since defendant had the right to dam the stream, and plaintiff did not complain of an abuse of that right resulting in the pollution of the water, but attributed the pollution to the fact that hogs were permitted to have access to it, and the evidence followed that theory, the decree restricting the right to dam was not warranted either by the pleadings or the evidence.

*Appeal from Delaware District Court.*—HON. JOHN J. NEY, Judge.

FILED, MAY 16, 1889.

ACTION in equity to enjoin defendant from damming and polluting the water of a stream. There was a trial, and a decree in favor of plaintiffs. The defendant appeals.

*Yoran & Arnold,* for appellant.

*Herrick & Doxsee,* for appellees.

ROBINSON, J.—The parties to this action own adjoining farms, which are devoted in part to the business of stock-raising. These farms are intersected by a water-course, which in ordinary seasons contains a stream of water which flows from the farm of defendant southward across the land of plaintiffs, and is sufficient for the stock of plaintiffs and defendant. In the spring or early summer of 1887, defendant constructed a dam across this water-course, a few feet north of the land of plaintiffs, which had the effect to create a pool of water six or eight inches deep, fifteen or twenty feet wide and five or six rods long. That dam was afterwards replaced by another, made in part with a large watering trough, but the effect was about the same as that of the first dam. It is claimed by plaintiffs that the dam obstructs the flow of a natural and permanent stream, to their damage ; that if it were unobstructed it would furnish all the water needed for their stock, as it had done for many years previous to the building of the dam, but that the dam has so obstructed the flow of water that it is insufficient for their stock ; that when the flow is not entirely stopped the water is so impure in consequence of the acts of defendant as to be unfit for the use of stock. Defendant admits the construction of the dams, but insists that they were made necessary by lack of rains in 1887 ; that he did no more in constructing them than was necessary to obtain a sufficient supply of water for his own stock ; and that the diminished flow onto the land of plaintiffs was not due to any unauthorized act on his part.

The evidence shows that the season of 1887 was unusually dry; that the stream in question was much

affected by the drought; that in the driest time most, if not all, the water collected by defendant came from springs on his own land, and that his device for obtaining a supply of water was a common one, and that it did not give a greater supply of water than his stock required. Some of the evidence tends to show that at times a scum formed on the surface of the pool above the dam and flowed thence onto the land of plaintiffs. The decree rendered by the district court perpetually enjoins defendant "from so damming or obstructing the natural flow of the water in the creek" where it crosses the land of defendant above that of plaintiffs, "as that the same shall become stagnant or foul in any manner, so that the water shall become unwholesome for the use of plaintiffs' stock." The decree, by necessary implication, holds that defendant had a right to construct the dam. Since plaintiffs do not appeal, that must be regarded as the law of this case, and we are only required to determine whether the law and the evidence justify the limitation fixed by the decree, which is, in effect, that the natural flow of the stream shall not be so obstructed as to render the water which flows from the obstruction onto the premises of plaintiffs unwholesome for the use of their stock.

The right of defendant to use all the water of the stream, if so much is required by his stock, seems to be recognized by the decree, and is sanctioned by law. Washb. Easem. 331; Gould, Waters, sec. 205; Ang. Water-Courses, 128; *Miner v. Gilmour*, 12 Moore, P. C. 156; *Stein v. Burden,* 29 Ala. 127. It is well settled, also, that the lower owner on a water-course has a right to have the water which flows from the land of an upper owner in as pure and wholesome a condition as a reasonable and proper use of the stream by the upper owner will permit. The latter has no right to pollute the water unnecessarily. Washb. Easem. 331–334; *Dumont v. Kellogg*, 29 Mich. 420; Wood, Nuis., sec. 427 *et seq.*; Cooley, Torts, 587; *Gladfelter v. Walker*, 40 Md. 13. The evidence shows that the supply of water secured by means of the dam was

not more than the stock of defendant needed. At times it was insufficient. The stream was so small that the needed supply could be accumulated only by means of a reservoir. If scum formed on the pool, it was because of the dry and hot weather, and not because of an unnecessary accumulation of water. But the pollution of water complained of by plaintiffs in their petition is not that which results from stagnation. They complain that the dam prevents all flow of water from defendant's onto their premises in ordinary times, and that defendant "for several years past" has maintained on his premises hog-pens upon and over the water-course, and has "kept therein a large number of hogs, thus polluting the water of said creek, and rendering it unwholesome for the use of plaintiffs' said stock ; and defendant now maintains said pens, and keeps therein a large number of hogs, as stated, with the effect as above stated." The petition does not charge that the water became stagnant or foul by reason of the dam. That is complained of only on the ground that "in ordinary times" it wholly prevents the flow of water from the premises of defendant onto the premises of plaintiffs.

It is conceded by appellees that the use of the land of defendant, through which the stream flows, as a hog pasture is not involved on this appeal. The evidence as to the pollution of the water was chiefly directed to its use for hogs. There is but little evidence as to the condition of the water in the pool as a result of stagnation. If it be admitted that the allegations and prayer of the petition are broad enough to permit the relief against stagnant water given, yet we are of the opinion that plaintiffs failed to show that the condition of the water, if stagnant and unwholesome, was due to any unauthorized act of the plaintiffs. No doubt the defendant should be restrained from so interfering with the stream as to unnecessarily injure the plaintiffs, but, until he has done or has threatened to do some unauthorized act, he should not be subjected to the annoyance and expense of litigation. The relief granted by the district court would have been proper, had it been supported by the

pleadings and the evidence. In fact, it was not that which plaintiffs sought. The real grounds of their action were, in substance, that defendant had no right to dam the stream, and that he had no right to permit the hogs to have free access to it. Neither of these grounds is involved in this appeal. We conclude that the decree of the district court should be    .    REVERSED.