H. A. MARSH, Appellant, v. T. B. McNIDER *et al.*, Appellees.

**Water Courses:** ICE IN NON-NAVIGABLE STREAM: RIGHTS OF TENANT. Under a lease of lands extending to the middle of a non-navigable stream, the tenant is entitled, as against the landlord and his assigns, to the use of the ice forming in the stream on the side of said land, for all purposes, so far as his use does not affect the rights of others on such stream.

*Appeal from Cerro Gordo District Court.*—HON. JOHN C. SHERWIN, Judge.

SATURDAY, MAY 20, 1893.

ACTION in equity to restrain the defendants from cutting or otherwise interfering with ice, and to recover the value of ice which they have cut, which is claimed by the plaintiff. There was a hearing on the merits, and a judgment in favor of the defendants. The plaintiff appeals.—*Affirmed.*

*Cliggitt & Rule*, for appellant.

Such cases as we have been able to find, except the case of *Higgins v. Kusterer*, 41 Mich. 318, hold that ice is realty. 9 Am. and Eng. Encyclopedia of Law, pages 853, 856, and notes; *State v. Pettemyer*, 33 Ind. 402, 5 Am. Rep. 224; *Washington Ice Company v. Shortall*, 101 Ill. 46. See *Huff v. Edgerton*, 26 Ind. 35, as to right of owner of the soil to cut and take ice. In *Bookville & Co. v. Butler*, 91 Ind. 134, it is held that the owner of an easement in water has no right to the ice formed thereon against the owner of the soil. This would seem to apply to the question between landlord and tenant and favor the right of the landlord to ice. The right to take ice grows out of the title to the bed of the stream. *Stevens v. Kelley*, 78 Me.; Gould on Waters, section 191; *Ham v. Salem*, 100 Mass.; *Paine v. Woods*, 108 Mass. 172; *Elliott v. Fitchenburg R'y Co.*, 10 Cush. (Mass.) 191; *Cummings v. Barrett*, 10 Cush. (Mass.) 186. The cases collected and cited in Gould on Waters, section 191, all hold ice to be real estate except the Michigan case before cited. Having fixed its character as realty, its ephemeral character did not change its ownership, or transfer it from the owner of the soil to the mere farming tenant. The tenant for life may not cut wood to sell. *Webster v. Webster*, 33 N. H. 18; *Smith v. Jewett*, 40 N. H. 532; *Hubbard v. Shaw*, 12 Allen (Mass.), 122. Nor to burn bricks, made from clay dug on the land where bricks are for sale. *Livingstone v. Reynolds*, 2 Hill (N. Y.), 157. Nor to be used on another estate. *Cook v. Cook*,

11 Gray (Mass.) 123. Some cases hold that the tenant for life may operate mines already open, and perhaps in some instances open new ones; but we think these cases will generally be found to apply to tenants for life and not for years, or to leases of mining lands (not agricultural lands), if tenant for years is recognized to have the right to operate old mines. *Sayers v. Hopkinson*, 110 Pa. St. 473; *Shoemaker's Appeal*, 106 Pa. St. 392; *Westmoreland Coal Co.'s Appeal*, 85 (or 83) Pa. St. 344; *Reed v. Reed*, 16 N. J. Eq. 248; *Richardson*, 72 Me. 403. In Woods on Landlord and Tenant [1 Ed.], page 99, it is said a tenant for life may work open mines, but not open new ones. When a tenant leases land for agricultural purposes, it is waste for him to work mines. *Id.*, page 703; *United States v. Parrott*, 1 McAll. (U. S. C. C.) 271; *Hill v. Taylor*, 22 Cal. 192. When tenant has been allowed to cut wood for purpose of clearing land, he may not cut it with view to profit from sale. *Kidd v. Denison*, 6 Barb. 9; *Davis, v. Gilliam*, 5 Ired. (N. C.) 308; *Perkins v. Coxe*, 2 Hay (N. C.) 339. Where tenant claims to cut timber for repairs he can not sell it, and out of the proceeds repair the house (22 Vin. Abr. 453), and if he cut timber for repairs he must at his peril select such as is suitable. *Simmons v. Norton*, 7 Bing. 640. See, also, *Smith v. Rome*, 19 Ga. 89; *Huntly v. Russell*, 132b, 572; *Livingstone v. Reynolds*, 2 Hill, 157; Coke's Inst., 53, 54b; *Moyle v. Moyle*, Owen, 66; *Saunders Case*, 5 Rep. 12; *Stoughton v. Leigh*, 1 Taunt. 402; *Darcy v. Askwith*, Hob. 234; *Viner v. Vaugn*, 2 Beav. 466; *Irwin v. Covode*, 24 Pa. St. 162; *Owings v. Emery*, 6 Gill (Md.), 260; *Thatcher v. Phinney*, 7 Allen (Mass.), 146; *Franklin Coal Co. v. McMillan*, 49 Md. 549; *Crouch v. Puryear*, 1 Raud (Va.), 258; *Watterson v. Reynolds*, 95 Pa. St. 474. From all these cases it appears that the ice is as much a part of the realty as sand, gravel, alluvion, stone

in the quarry, and ore in the mine, and, therefore, belongs to the owner of the soil and does not belong to the tenant any more than do the other kinds of property. The tenant in this case had a right to a reasonable use of the water for ordinary uses of carrying on the farm, but no right to sell the ice for a profit, as that was not the object or purpose for which the land was rented.

*Richard Wilber*, for appellee.

The case of *Higgins v. Kusterer*, 41 Mich. 318, is supported by the best common sense and its arguments are unanswerable. It seems to be approved by Gould on Waters, section 191, and Warvelle on Venders, bottom of page 22. Ice has none of the characteristics of permanency that belong to real estate, nor is it a product of it. It has no likeness to accretions. It does not spring from the soil, nor does its production exhaust it, and when it is cut or melted the estate is the same as before. The landlord's only right to enter the premises at all was to collect his rent, to make repairs necessary to prevent waste or to protect his reversionary interests merely. Taylor on Landlord and Tenant [5 Ed.], sections 173, 174. A lessee for a year is entitled to work an open mine upon the premises, there being nothing in the lease to the contrary. *Harlon v. Lake Sup. Iron Co.*, 36 Mich. 116, citing 1 Wash. 412. A lessee is entitled to the accretions added to demised premises fronting on a river. 12 Am. and Eng. Encyclopedia of Law, 698, note 2. He has the sole and exclusive right to use and occupy the premises during his term, and may maintain trespass against his landlord for a wrongful entry. 12 Am. and Eng. Encyclopedia of Law, 695, 696. He is entitled to the use of all those privileges, easements and appurtenances in any way belonging to the premises under the lease, as incident to his grant unless

they have been expressly reserved and excepted out of the lease. 12 Am. and Eng. Encyclopedia of Law, 708. 2 Bouvier's Dictionary, page 6, section 12; Taylor on Landlord and Tenant, section 178. Even the hirer of a flock of sheep is entitled to the increase of the flock during the term, and he is regarded as the temporary proprietor. 2 Kent's Commentaries [8 Ed.], page 433. The ice in question was a regular product adhering to the estate, and came as regularly each year as the grass, and may fairly be presumed to be estimated by the parties to the leases as a source of profit arising from the use of the premises; and under the authorities, there being no reservation, it belonged to the tenant as much as any product of the estate.

ROBINSON, C. J.—Clara E. Doud is the owner of that part of a certain tract of land which is west of the center of a stream of water which flows across it. That stream is about eight rods in width, is not navigable, and is known as "Lime Creek." Mrs. Doud made to the plaintiff a bill of sale of the ice which should be formed in her part of the stream during the winter which commenced in the year 1890. When Mrs. Doud purchased the land, in June of that year, it was occupied by S. M. Fulghum, as subtenant, under a lease which gave him the right to the free and uninterrupted occupation thereof until April, 1891, and the title acquired by the purchase was subject to his rights under the lease. He sold to the defendants the ice which was included in the bill of sale to the plaintiff, and, after the ice was formed, they cut and removed portions of it for their own uses. The plaintiff contends that the ice was real estate, a part of the land owned by Mrs. Doud; therefore, that the lease gave to the tenant no right to remove it; and that the bill of sale transferred the ownership of it to the plaintiff.

It is well settled that, under some conditions, water and ice are to be regarded as real estate, belonging to the owner of the land which is beneath it. See *State v. Pottmeyer*, 33 Ind. 402, and cases therein cited; 9 Am. & Eng. Encyclopedia of Law, 853. And, when that is the case, the landowner or his assign has the exclusive right to gather and dispose of the ice for his own benefit, subject to the rights of other riparian owners. See *Bigelow v. Shaw*, 65 Mich. 341, 32 N. W. Rep. 800, and cases therein cited. In this state the owner of land has the right to use so much of the water of a stream flowing over it as is necessary to supply what are termed his "natural wants." *Spence v. McDonough*, 77 Iowa, 461; *Ferguson v. Firmenich Manufacturing Co.*, 77 Iowa, 576. Where he does not own the soil under the stream, as where it is meandered, and his ownership does not include its bed, he has no exclusive right to the ice which forms in it. *Serrin v. Grefe*, 67 Iowa, 197. In such cases, whoever has lawful access to the stream may use the water and the ice which forms therein in such manner as does not interfere with the rights of the riparian owners. *Brown v. Cunningham*, 82 Iowa, 515.

Whether the ice which forms in a running stream is to be regarded technically as a part of the land over which it is formed or to which it is attached is a question we do not find it necessary to determine. It is water congealed, and, although more readily secured and controlled for many purposes than water, it is in most respects subject to the rules which govern the rights of the riparian proprietor to the water. Ice may be attached to his land, but it was not produced by the land, drew nothing from it, and will give nothing to it. It is transient by nature, and will soon disappear, unless prevented by the labor of man. It is a product of the changing seasons, which the occupier of the soil may use as he might have used the water from which

it was formed.   If he own the land under it, he. may use the ice as he might have used the water, to supply his natural wants, and for other purposes, so far as he can do so without affecting the rights of others, as of lower owners on the same stream.   Such use appertains to the land, and belongs to him who has the right to possess and use 'it.

In this case that right was conferred upon Fulghum, by virtue of the lease.   It is said that his lease was for ordinary farming purposes only, but, if that were true, he would have had the right to use so much of the water and ice as he required for such purposes.   The lease, however, does not restrict the tenant to the use of the premises for agricultural purposes only, but gives him the right to the "free and uninterrupted occupation thereof," and necessarily the right to use them and their appurtenances.   Nothing was reserved, excepting timber not required for repairing fences.   The leased premises included one-half of the bed of the stream, and such rights as the owner had in the stream itself.   He retained no right to enter upon the premises to gather ice, and his grantee acquired none as against the tenant.   We are of the opinion that the lease gave to the tenant the right to cut and remove the ice in question, and find that such right was assigned to the defendants.   The judgment of the district court is AFFIRMED.