GEHLEN BROTHERS, *et al.*, v. J. F. KNORR, *et al.*, Appellants.

**Riparian Rights:** ᴅᴀᴍꜱ: *Gathering ice.* The erection of a dam on a non-navigable stream by a riparian owner to form a pond from which to harvest ice in winter, is not such unreasonable use of the water as will entitle a lower mill owner to an injunction; it appearing that ordinarily but twenty-five per cent. of the power used by the mill was furnished by the water, and that it took only two days and a night to fill the upper owner's pond, after which the water flowed down again with no material diminution.

Sᴀᴍᴇ. The right to cut and remove ice from a non-navigable stream may be exercised by the owner of the soil to any extent for his own use or for storage or sale, if he does not thereby appreciably diminish the amount of water than can be used by the lower proprietor.

Sᴀᴍᴇ. A pond from which ice may be taken in the winter season may be made by a riparian proprietor by the construction of a dam to collect and retain the water of the stream, to a reasonable extent.

Aʀᴛɪꜰɪᴄɪᴀʟ ᴜꜱᴇ: *Reasonableness.* In determining whether an artificial use of the water of a stream is reasonable or not it is necessary to consider what the use is for, its extent, duration, necessity and application, the nature and size of the stream and the several uses to which it is put, the extent of the injury to one proprietor and the benefit to the other, and all other facts which may bear upon the reasonableness of the use.

*Same.* A detention of a non-navigable stream for two or three days while a pond is filling, is not an unreasonable detention which will constitute an actionable injury to the lower proprietors.

Cᴏɴᴅᴇᴍɴᴀᴛɪᴏɴ ᴘʀᴏᴄᴇᴇᴅɪɴɢꜱ. The condemnation of the right to maintain a dam, does not give any right which is not enjoyed by riparian owners, generally, as against an upper land owner to whom no damages were awarded, presumably because it was found that the back water from the dam would not overflow his land.

Lᴀᴅᴅ, J., takes no part.

Nᴏᴛᴇ.—For rights as to ice, see also *Eidemiller Ice Co. v. Guthrie* (Neb.) 28 L. R. A 581, and cases cited in note,

*Appeal from Plymouth District Court.*—HON. JOHN F. OLIVER, Judge.

SATURDAY, APRIL 10, 1897.

THIS is an action in equity, by the plaintiffs, to restrain the defendants from erecting a dam across the Floyd river, at any point thereon within such distance above plaintiffs' dam as would interrupt or stop the natural flow of the water in said stream, to plaintiffs' detriment. The plaintiffs allege: That they own and operate a steam and water power grist mill, which was erected in 1870, and has since been used as a flouring mill. That part of the power with which said mill has been operated, was derived from water taken from said river, and, to utilize the water of said river, a dam was built, which has ever since been maintained. Before erecting said dam, the then owner of said mill site, brought an action in the proper court against parties owning land adjacent to said river above the point where said dam was thereafter located, and which might be overflowed by back water from the dam, to which action Jacob Ruble was made a defendant. He then owned the land upon which the dam objected to by the plaintiffs was afterward built. That the free and uninterrupted flow of the water in said river above plaintiffs' dam is essential for the full enjoyment and operation of plaintiffs' mill. It is averred, that the defendants are about to construct a dam, which will stop the flow of the water down said stream, which would irreparably damage plaintiffs. The defendants admit the ownership of the property where said dam was proposed to be built; that they expected to erect a dam thereon, for the temporary purpose of forming a pond of water, from which to harvest ice during the winter months; and say, that such acts would not divert the flow of the

river, or decrease the volume of water therein. They deny all other allegations of the petition. A temporary injunction issued, as prayed, and on final hearing it was made perpetual. Defendants appeal.— *Reversed.*

*P. Farrell* and *Ira T. Martin* for appellants.

The mode and extent to which one mill-owner may use and apply the waters of a stream, as between him and another mill-owner, is not what would be reasonable for his particular business, but what is reasonable, having reference to the rights of the other proprietors on the stream.

Washburn, Easem., 379.

Plaintiffs can have no monopoly in the flow of the water; every proprietor above them has the same right to the use of the water for artificial purposes that plaintiffs have, and every one of the upper proprietors, for the purpose of enabling themselves to reap the benefit of this right, have, as a natural consequence, the right to temporarily stop the flow of the stream for such length of time as will put them in position to reap the benefits of their rights.

Cooley, Torts (2d Ed.), page 693; *Union Mill & Min. Co. v. Dangberg,* 2 Sawy. 450; *Tyler v. Wilkinson,* 4 Mason, 397; *Union Mill & Min. Co. v. Ferris,* 2 Sawy. 176; *Dumont v. Kellogg,* 29 Mich. 420 (18 Am. Rep. 102); *Bullard v. Saratoga Victory Mfg. Co.,* 77 N. Y. 525; *Palmer v. Mulligan,* 3 Cai. 307, 2 Am. Dec. 270; *Merritt v. Brinkerhoff,* 17 Johns. 306, 8 Am. Dec. 404; *Davis v. Getchell,* 50 Me. 602, 79 Am. Dec. 636; *Clinton v. Myers,* 46 N. Y. 511 (7 Am. Rep. 373); *Wadsworth v. Tillotson,* 15 Conn. 366, 39 Am. Dec. 291; *Elliot v. Fitchburg R. Co.,* 10 Cush. 191, 57 Am. Dec. 85; *Haskins v. Haskins,* 9 Gray, 390; *Snow v. Parsons,* 28 Vt. 459, 67 Am. Dec.

723; *Miller v. Miller*, 9 Pa. 74, 49 Am. Dec. 547; *Gibson v. Fischer*, 68 Iowa, 29.

There can be no prescriptive right because the water has never flowed back upon the lands of the defendants, and if it were conceded that such back flow for the necessary length of time would create a prescriptive right, still, there having been no back flow in this case, no such right could exist.

*Springfield v. Harris*, 4 Allen, 494, 81 Am. Dec. 715; *Van Hoesen v. Coventry*, 10 Barb. 518; *Oregon Iron Co. v. Trullenger*, 3 Or. 1; *Keeney & W. Mfg. Co. v. Union Mfg. Co.*, 39 Conn. 577; *Timm v. Bear*, 29 Wis. 254; *Whaler v. Ahl*, 29 Pa. 98; *Gould v. Boston Duck Co.*, 13 Gray, 442; *Hoy v. Sterrett*, 2 Watts, 327, 27 Am. Dec. 313; *Elliot v. Fitchburg R. Co.*, 10 Cush. 191, 57 Am. Dec. 85; *Snow v. Parsons*, 28 Vt. 459, 67 Am. Dec. 723; *Ware v. Allen*, 140 Mass. 513; *Red River Roller Mills v. Wright*, 30 Minn. 249 (44 Am. Rep. 194); *Ashby v. White*, 1 Smith, Lead. Cas., 9th Am. Ed., page 489.

*I. S. Struble* for appellees.

KINNE, C. J.—I.   Plaintiffs claim that by virtue of the condemnation proceedings they have acquired a right, as against the defendants, not only to flow the water back upon their land, but also a right to the use and enjoyment of the water of the stream which they would not otherwise possess, as riparian owners.

In the condemnation proceedings it appears that the defendant, Rubel, the owner of the land, was found not entitled to any compensation for damages.   It is fair to presume, in view of this and other evidence in this case, that such finding was based upon the theory that the back water from the plaintiff's dam would not overflow Rubel's land, and hence he was not entitled to damages.   We

think the testimony in the case before us shows that ever since the erection of plaintiff's dam there has been a current in the river below Ruble's land, hence it cannot be said to be affected with back water from the dam. Such being the case, plaintiffs acquired no right as against the upper landowner, Ruble, to the water itself, or its use, which is not enjoyed by riparian owners generally.

II. We first proceed to state the law applicable to this case. We shall then be better able to apply it to the facts as they are disclosed by this record. Plaintiffs use the waters of the stream for propelling, in part, the machinery of their mill. Defendants propose to use the water from the same stream, in a congealed state, in the form of ice, which is to be gathered for sale. Both uses are what is known in law as artificial, as distinguished from natural uses. *Willis v. City of Perry*, 92 Iowa, 297 (60 N. W. Rep. 729). We need only consider, then, what the law is as to the rights of riparian owners to the use of the waters of a non-navigable stream for artificial purposes. Some general propositions may well be stated. The law is that as to such use, and in the absence of superior rights acquired by license, grant, or prescription, the rights of such proprietors in the water of the stream are equal. *Willis v. City of Perry, supra.* It follows, therefore, that the defendants had the right to use the water reasonably, having reference to plaintiffs' rights therein. Washburn Easem. page 379. Broadly stated, the general rule is that the owner of the land through which a stream of water runs, has a right to have it flow over his land in the natural channel, undiminished in quantity, and unimpaired in quality, except in so far as diminution or contamination is inseparable from a reasonable use of such water. *Willis v. City of Perry, supra; Ferguson v. Manufacturing Co.*, 77 Iowa, 578 (42 N. W. Rep. 448); *Spence v. McDonough*, 77

Iowa, 462 (42 N. W. Rep. 371); 28 Am. & Eng. Enc. Law, page 948; *Elliot v. Railroad Co.*, 10 Cush. 191, 57 Am. Dec. 85, notes; *Moulton v. Water Co.*, 137 Mass. 163; *Garwood v. Railroad Co.*, 83 N. Y. 400; *Hydraulic Co. v. Butler*, 91 Ind. 138; *Heilbron v. Canal Co.*, 75 Cal. 426 (17 Pac. Rep. 535); *Dumont v. Kellogg*, 29 Mich. 420; *Mining Co. v. Dangberg*, 2 Sawy. 450, Fed. Cas. No. 14,370; *Tyler v. Wilkinson*, 4 Mason, 397, Fed. Cas. No. 14,312; *Bullard v. Manufacturing Co.*, 77 N. Y. 530; *Palmer v. Mulligan*, 3 Caines, 307; *Davis v. Getchell*, 50 Me. 602, 79 Am. Dec. 636, note; *Wadsworth v. Tillotson*, 15 Conn. 366; *Haskins v. Haskins*, 9 Gray, 390; *Snow v. Parsons*, 28 Vt. 450; *City of Springfield v. Harris*, 4 Allen, 494; *Red River Roller Mills v. Wright*, 30 Minn. 249 (15 N. W. Rep. 167). No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case. But in determining whether a use is reasonable we must consider what the use is for; its extent, duration, necessity, and its application; the nature and size of the stream, and the several uses to which it is put; the extent of the injury to the one proprietor, and of the benefit to the other; and all other facts which may bear upon the reasonableness of the use. *Red River Roller Mills v. Wright*, 30 Minn. 249 (15 N. W. Rep. 167), and cases cited. Washburn, Easem., page 379. Now, while one riparian proprietor may not divert the water of a stream so as to deprive a lower proprietor on the same stream of the benefit thereof, such upper proprietor may reasonably detain the water for proper purposes. Washburn, Easem., page 380; *Hydraulic Co. v. Butler*, *supra*; 28 Am. & Eng. Enc. Law, page 955; Gould, Waters, section 213; Angel, Watercourses, sections 90-96; *Gillett v. Johnsoon*, 30 Conn. 180. The doctrine that such use by the upper proprietor may result in diminishing the quantity of water which will go down the stream,

and may affect the current by retarding the flow to a reasonable extent, and still be consistent with the existence of a common right, was early held in this country, and has been constantly adhered to. *Tyler v. Wilkinson, supra; Dumont v. Kellogg, supra; Bullard v. Manufacturing Co., supra; Ice Co. v. Guthrie* (Neb.) 60 N. W. Rep. 717; Gould, Waters, section 191; *Palmer v. Mulligan, supra; Davis v. Getchell, supra; Van Hoesen v. Coventry*, 10 Barb. 518; *Iron Co. v. Trullenger*, 3 Or. 1; 3 Kent, Comm., page 439; *Kenney & Wood Mfg. Co. v. Union Mfg. Co.*, 39 Conn. 577; *Timm v. Bear*, 29 Wis. 254; *Whaler v. Ahl*, 29 Pa. St. 98; *Gould v. Duck Co.*, 13 Gray, 442. If the general rule that each riparian proprietor is entitled to the flow of the stream according to its natural course, without interruption or diminution, should be strictly adhered to, it would result in a virtual abrogation of the well-settled doctrine that the rights of all proprietors of the stream are equal, and would "preclude the use of flowing waters in most cases; as, where power is desired, the rule must yield to the necessity of gathering the water into reservoirs. It is lawful to do this where it is done in good faith, for a useful purpose, and with as little interference with the rights of other proprietors as is reasonably practical under the circumstances." Cooley, Torts (1st Ed.), page 584; *Tyler v. Wilkinson, supra.* In *Dumont v. Kellogg, supra*, it was held, in an action by a mill proprietor against one having a mill and dam above him, on the same stream, for damages caused by detention of the water, that it could not be said that such upper proprietor had no right to use the water to the prejudice of such lower proprietor; nor could it be held that such upper proprietor could not lawfully divert any of the water which would otherwise flow down the stream. The court said the real question was "whether, under all the circumstances of the

case, the use of the water by one is reasonable, and consistent with a correspondent enjoyment of right by the other." In *Bullard v. Manufacturing Co., supra*, it is said that the fact that an injury results to other riparian owners from the construction and use of dams is not decisive upon the question as to whether such use is permissible. In that case the upper proprietor had interfered with the flow of water by collecting the water at times in a pond, and while it was so collecting, plaintiff had not sufficient water to use his mill. The court of appeals sustained a finding by the lower court that the detention of the water by the upper proprietor was not unreasonable. In *Palmer v. Mulligan, supra*, the court said: "The erection of dams on all rivers are injurious in some degree to those who have mills on the same stream below him by withholding the water, and by a greater evaporation in consequence of the increased surface; yet such injuries, I believe, were never thought to afford a ground of action." In *Merritt v. Brinkerhoff*, 17 Johns, 306, it is said: "The common use of the water of a stream by persons having mills above is frequently, if not generally, attended with damage and loss to the mills below, but that is incidental to the common use, and for the most part unavoidable. If the injury is trivial, the law will not afford redress, because every person who builds a mill does it subject to that contingency. The person owning an upper mill on the same stream had a lawful right to use the water, and may apply it in order to work his mills to the best advantage, subject, however, to this limitation: that if, in the exercise of this right and in consequence of it, the mills lower down on the stream are rendered useless and unproductive, the law in that case will interpose and limit the common right, so that the owners of the lower mills shall

enjoy a fair participation." In *Davis v. Getchell, supra,* it is held, such riparian owners may, to a reasonable extent, diminish the volume of water, and may detain it a reasonable time, in order to accumulate a head, which can be made available for practical use. *Timm v. Bear, supra; Whaler v. Ahl, supra.* In *Keeney & Wood Mfg. Co. v. Union Mfg. Co., supra,* it is said: "The right of the proprietor above, to make the water useful to him by detaining it long enough to render it useful, is of the same quality as of the proprietor below, to take the water out of the course of the current for use, when both parties are applying the water to the artificial use of propelling machinery." In *Gould v. Duck Co., supra,* it is held, that an upper proprietor may, under proper circumstances, detain the water of a stream so long as may be necessary to raise the requisite head, and accumulate such a quantity as will enable him to use the water in propelling his machinery.

Now, applying the law to the facts of this case, we are required to determine whether the use by the defendants was, under all of the circumstances, a reasonable use. If it was, plaintiffs were not entitled to any relief. Plaintiffs' mill was operated in part by steam and in part by water power. It had three water wheels of one hundred, thirty, and twenty-five horse power, respectively. Its capacity is one hundred and fifty barrels of flour and five car loads of feed per day. Ordinarily, about seventy-five per cent. of the power was furnished by the engine, and twenty-five per cent. by the water. For several years, and since the capacity of the mill was doubled, there has not been water sufficient to operate the mill at anywhere near its full capacity. The stream is now about a foot deep and three feet wide. Plaintiffs' evidence tends to show that after the defendants erected their dam plaintiffs were compelled

to reduce their output of flour about fifteen barrels per day; that before the erection of the defendants' dam, as well as after it had been removed, plaintiffs had two feet of water in their race, and four feet on the wheels; and that while said dam remained, plaintiffs had about three inches of water in their race and two feet on the wheels. Defendant's dam was built for the sole purpose of collecting and retaining sufficient water in the pond so that ice could be cut and taken therefrom during the winter season. It took about two days and one night to fill the pond, and, when filled, water flowed over it or through the chute. Plaintiffs themselves had for years cut, or permitted to be cut, large quantities of ice from their mill pond, and assert that it had not interfered with the volume of water, or with the operation of their mill. It is not claimed that there was any diversion of the water by the defendants, unless the taking ice from their pond could be treated as such. The claim is, that the defendants, by erecting their dam, detain the water in a pond, and thereby the water is spread out over a broader surface, and soaks into the ground; also, that more is lost by evaporation than would be if the stream was left to its natural flow. As to the damage by soaking and evaporation, in view of the authorities cited, we do not think the plaintiffs can be heard to complain of it. Both parties had a dam and a pond, and it may fairly be presumed, that the loss by soakage and evaporation is a necessary result of the reasonable use of the stream by any one for artificial purposes, and therefore it would furnish no cause of action to the plaintiffs. We think it is fair to say, from all of the evidence, that, after the defendants' pond had filled, the flow of water therefrom down the stream to the plaintiffs' pond, would not have been materially interfered with. It may be, that the taking of ice from

the pond,—which, of course, resulted in the removal of that much water, in a congealed state,—would slightly decrease the quantity of water which would flow down to plaintiffs' pond, but it is evident, from the evidence, that its effect would not be such as to justify a court in preventing defendants from using the water as they proposed, unless there is a different rule applying to the right to remove ice, from that governing the right to use water, which question we shall consider later. We do not think that a detention of the water for two or three days by defendants, while their pond was filling, can be said to be an unreasonable detention. It is clear that the use of the water of the stream for any artificial use whatsoever by the defendants would require the erection of a dam, and the detention of the water long enough to fill the pond. If they had not the right to do this, they would not be placed upon an equality of right with the plaintiffs as to the use of the water. If the contention of plaintiffs be sustained, the result would be that, in effect, they would be given rights in the water of the river superior to all persons above them, so far as artificial uses are concerned; and upper riparian owners would be deprived of all right to use the water for artificial purposes. Such a holding would not be in accord with the rules of law applicable to such cases, and would be most inequitable and unjust. These parties are, by the law, placed upon an equality as to their right to use the water of this stream, and neither may exercise his right as to unduly interfere with the rights of the other; still both must put up with such slight disadvantages as are indispensable to a reasonable use by the other.

III. The rights of the parties to the use of the water of the stream are in no wise affected by the fact that it was proposed to remove the water in its congealed state. In *Brown v. Cunningham*, 82 Iowa,

512 (48 N. W. Rep. 1042), it is held that the same rights to ice exist which may be held to the water, "for ice is water in another form—congealed water." In *Marsh v. McNider*, 88 Iowa, 395 (55 N. W. Rep. 469), it is held that ice in a running stream is, in most respects, subject to the rules which govern the rights of the riparian proprietor, to the water. That the defendant's right to the ice is the same as in the water before it is congealed is well settled. *Elliot v. Railroad Co.*, 10 Cush. 191; *Stevens v. Kelley*, 78 Me. 445 (6 Atl. Rep. 868); *Cummings v. Barrett*, 10 Cush. 186; *Hydraulic Co. v. Butler*, 91 Ind. 138; *State v. Pottmeyer*, 33 Ind. 402; *Ice Co. v. Guthrie* (Neb.) 60 N. W. Rep. 722; *Bigelow v. Shaw*, 65 Mich. 341 (32 N. W. Rep. 800). The rule is stated in several of the cases above cited, that the owner of the soil under a non-navigable water course, has the right to cut and remove the ice from the stream adjoining his land in any quantity, and to any extent, for his own use, or for storage or sale, if he does not thereby appreciably diminish the head of water at the dam of the lower proprietor. *Paine v. Woods*, 108 Mass. 172; *Searle v. Gardner* (Pa. Sup.) 13 Atl. Rep. 835; *Howe v. Andrews*, 62 Conn. 398 (26 Atl. Rep. 394); Gould, Waters, section 191.

We have not discussed the evidence in detail in this case; indeed, we have not referred to all of it, but we have fully considered it in arriving at our conclusions. There is evidence tending to show that the back water from plaintiff's pond flowed over some of the land where defendant's dam and pond were situated, but we are impressed with the conviction that the weight of the evidence, in view of all of the facts, is to the contrary. We are of the opinion that defendants had a right to build the dam, and to reasonably detain the water until their pond was filled, and to remove and sell the ice which

might be formed thereon, and that whatever damage plaintiffs sustained by reason thereof was necessarily incident to such reasonable use, and hence furnished no cause of action to the plaintiffs. In view of the disposition made of the case, we need not pass upon appellee's motion. For the reasons given, the decree of the district court is REVERSED.

LADD, J., takes no part.